**MATAGORDA VENTURES, INC., et al., Plaintiffs,**

v.

**TRAVELERS LLOYDS INSURANCE COMPANY and Farmington Casualty Company, Defendants.**

No. Civ.A. H–98–4213.

United States District Court,
S.D. Texas,
Houston Division.

Dec. 7, 2000.

Order Denying Reconsideration
March 7, 2001.

## MEMORANDUM AND ORDER

ROSENTHAL, District Judge.

In November 1998, Matagorda Ventures, Inc. and James Dale Birdsong, Jr. sued Travelers Lloyds Insurance Company ("Travelers"), seeking declaratory judgment and alleging breach of contract. The declaratory judgment sought is that Travelers owed a duty to defend Matagorda Ventures and Birdsong in connection with an ongoing trademark and copyright infringement lawsuit filed in the United States District Court for the Southern District of New York, by Movado Group, Inc. The contract claim is that Travelers breached its contractual obligation to provide plaintiffs a defense to the infringement suit.

Both sides have moved for summary judgment and have submitted responses and replies to the cross-motions. While those motions were pending, plaintiffs moved for leave to file a third and then a fourth amended complaint and requested judicial notice of materials submitted in support of their opposition to Travelers' motion for summary judgment.

After a careful review of the parties' pleadings, the cross-motions, responses, replies, and submissions, and the applicable law, this court GRANTS Matagorda Ventures' and Birdsong's request for judicial notice of materials in support of their opposition to Travelers' motion for summary judgment; DENIES Matagorda Ventures' and Birdsong's motion for summary judgment; GRANTS Travelers' motion for summary judgment; DENIES Matagorda Ventures' and Birdsong's motion for leave to file a third amended complaint; and DENIES their motion for leave to file a fourth amended complaint.

The reasons are stated below.

## I. Background

Matagorda Ventures is a Texas corporation that advertises and sells wristwatches over the Internet. It operates under the trade name "wristwatch.com"; its web site bears the domain name "www.wristwatch.com." (Docket Entry No. 31, Ex. A, p. 2). Visitors to the wristwatch.com web site can view information about watches made by a variety of manufacturers and can purchase watches on-line.

Birdsong is the vice-president of Matagorda Ventures and owns a one-half interest in the company. (Docket Entry No. 15, Ex. J, Birdsong affidavit, ¶ 3; Docket Entry No. 48, Ex. 4). Birdsong has been in the business of selling wristwatches on the wristwatch.com web site since 1996. (Docket No. 31, Ex. N, deposition of Birdsong, pp. 31, 64). From 1996 to approximately September 1997, the web site was administered by Megasaurus, Inc., a company Birdsong owned. (Docket Entry No. 15, Ex. J, Birdsong affidavit, ¶¶ 1, 3; Docket Entry No. 48, Ex. 4). In June 1997, Birdsong began negotiations with Ronald Doohaluk of Watch Wholesalers, Inc., to explore the possibility of joint ownership of Birdsong's Internet business. On an unspecified date in mid–1997, Birdsong and Doohaluk reached an agreement

to form a new, jointly-owned corporation, Matagorda Ventures, to operate the wristwatch.com web site.

The handwritten agreement between Birdsong and Doohaluk reads as follows:

Jim and Ron agree that Megasaurus, Inc. (Jim's company) will continue and own the domain name and registration for ~~ww.com and that~~ [sic] wristwatch.com. For $1.00 per year our new corporation Matagorda Ventures, Inc. (half-owned by each of us) will be the exclusive operators of wristwatch.com. Everything you or I do related to watches and watch-related products on the Internet will be done through Matagorda Ventures, Inc. This agreement will also include any other domain names registered by Megasaurus.

(Docket Entry No. 31, Ex. P). Matagorda Ventures incorporated on August 7, 1997, and "began operating the wristwatch.com web site and business in September 1997." (Docket Entry No. 48, Ex. 4).

On July 2, 1997, before Matagorda Ventures was incorporated, but after Birdsong had begun negotiations with Doohaluk, Birdsong received a letter from Mark Englemann, an attorney representing Movado Group, Inc. (Docket Entry No. 48, Ex. 4; Docket Entry No. 31, Ex. H). Movado Group manufactures and sells wristwatches under the trademark names of Movado, Vizio, and Concord, among others. (Docket Entry No. 31, Ex. G, p. 4). Englemann's letter accused Birdsong of infringing Movado Group's trademarks and copyrights through the wristwatch.com web site. In the letter, Englemann stated that "the wristwatch.com Web site falsely associates itself, its products and its services with Movado Group, Inc. and its affiliated companies," and that this "constitutes false advertising under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)." The letter demanded that Birdsong and Megasaurus:

(1) immediately cease advertising, selling, importing and distributing any MOVADO, MOVADO MUSEUM, MOVADO VIZIO, or, ESQ. watches or any other watches manufactured and/or sold by our client, (2) immediately cease any further use of any of the trademarks and other indicia of origin associated with MOVADO, MOVADO MUSEUM, MOVADO VIZIO, or ESQ. watches or any other watches manufactured and/or sold by our client, (3) delete all infringing copyrighted materials from your Web site, and (4) provide us with a full accounting of the number of watches sold and orders received to date, and a list of your remaining inventory.

(Docket Entry No. 31, Ex. H).

In July 1997, Birdsong showed this letter to his attorney, Stewart Feldman, and to Doohaluk. (Docket Entry No. 31, Ex. Q, deposition of Doohaluk, p. 47; Ex. S, deposition of Feldman, p. 9). On July 25, 1997, Feldman telephoned Englemann to discuss the letter. Feldman understood himself to be speaking in his capacity as attorney for "Jim Birdsong, Ron Doohaluk, and their various business interests." (Docket Entry No. 31, Ex. Q, deposition of Feldman, p. 23). Feldman testified that he and Englemann "had a long substantive conversation" in which they discussed ways of addressing Movado Group's concerns. (*Id.* at 26, 36).

Following his conversation with Englemann, Feldman recommended to Birdsong and Doohaluk that they make several changes to the wristwatch.com web site. Feldman testified that Birdsong and Doohaluk did so. Feldman called Englemann again on August 15, 1997. Feldman did not recall in his deposition whether he actually spoke to Englemann on this occasion, or whether he simply left "an extended voice mail message." (*Id.* at 28). Feldman testified that he told Englemann that

his clients had "made substantive or significant ... changes to the web site," which he hoped "addressed all or most of [Englemann's] bona fide concerns." Feldman ended his communication to Englemann by saying, "[i]f there is anything else that is of any great concern to you, let me know."(*Id.* at 28). The record does not reveal whether, or how, Englemann responded. Feldman testified that there was no written communication between himself and Englemann: "[i]t's not as if we reached agreements on all of the issues and it was resolved. There were discussions going on the way, so to spend my client's time and money writing a letter saying while I recognize there are a lot of issues outstanding, the ball is in your court to tell me how we stand thus far, I didn't think that was a productive use of my time." (*Id.* at 50).

The dates of the insurance policies at issue are important to this case. Farmington Casualty Company, a wholly owned subsidiary of Travelers Lloyds Insurance Company, issued a commercial general liability insurance policy, No. 071–BQ–0025888758–TWF, to Doohaluk's company, Watch Wholesalers, Inc., with effective dates of March 1, 1997 to March 1, 1998 (the "Farmington Policy"). (Docket Entry No. 31, Ex. I, p. 483). On August 19, 1997, shortly after Matagorda Ventures was incorporated, the Farmington CGL Policy was amended, by endorsement, to add "Matagorda Ventures, Inc.," "Megasaurus, Inc.," and "www.wristwatch.com (internet)" to the list of named insureds. (Docket Entry No. 31, Ex. I, p. 555).

On January 28, 1998, Travelers issued to Watch Wholesalers a commercial general liability policy, No. IL–PACP–389P294–1–TLC–98, with effective dates of March 1, 1998, to March 1, 1999. (Docket Entry No. 31, Ex. J). Attached to this policy was an endorsement form adding "Matagorda

Ventures, Inc.," "Megasaurus, Inc.," "Watch Wholesalers," "Liberty Time," and "wristwatch.com (internet)" to the named insureds. (Docket Entry No. 31, Ex. J, p. 565). The two CGL policies, referred to collectively in the motions as "the Travelers Policies," had identical provisions.

The Travelers Policies insured the holders against losses resulting from claims for damages caused by "personal injury" or "advertising injury." The Policies provided, in pertinent part, as follows:

Coverage B. Personal and Advertising Injury Liability

1. Insuring agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which the insurance applies....

b. This insurance applies to:

(1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

(2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services....

(Docket Entry No. 31, Ex. I, p. 517). The Travelers Policies contained several specific exclusions:

2. Exclusions

This insurance does not apply to:

a. "Personal injury" or "advertising injury"

(1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(2) Arising out of the oral or written publication of material whose first

publication took place before the beginning of the policy period;

. . . .

b. "Advertising injury" arising out of:

. . . .

(2) The failure of goods, products or services to conform with advertised quality or performance;

(*Id.* at 518). Section V of the Policies contained definitions of relevant terms:

1. "Advertising injury" means injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

. . . .

10. "Personal injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:

. . . .

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

(*Id.* at 524, 526).

In section IV, the Travelers Policies required the insureds to give notice in the event of a claim or occurrence:

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.

. . . .

b. If a claim is made or "suit" is brought against any "insured," you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved "insured" must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit;"

(*Id.* at 521). The Travelers Policies also contained a provision addressing specific circumstances under which failure to give prompt notice would not bar recovery:

With regard to Bodily Injury and Property Damage Liability, unless we are prejudiced by the insured's or your failure to comply with the requirement, any provision of this Coverage Part requiring you or any insured to give notice of occurrence, claim or suit, or forward demands, notices, summonses, or legal papers in connection with the claim or suit, will not bar liability under this Coverage Part.

(*Id.* at 553).

On September 3, 1998, Movado Group filed suit against Matagorda Ventures and Birdsong, styled *Movado Group, Inc. v. Matagorda Ventures, Inc. and James Dale Birdsong, Jr.,* NO. 98–6223, in the United States District Court for the Southern District of New York. The complaint asserted that the plaintiff, Movado Group, "manufactures, sells and distributes a wide variety of watches and related products of the

highest quality, under such internationally famous trademarks as MOVADO, VIZIO, ESQ., and CONCORD," trademarks that Movado Group asserts are "associated by the public and the trade with products of the very highest quality and reputation." (Docket Entry No. 31, Ex. G, pp. 4–5). The complaint alleged the following instances of infringing conduct by Matagorda Ventures and Birdsong:

- Matagorda Ventures and Birdsong offered for sale "watches bearing plaintiff's marks . . . without the authorization or approval of plaintiff," and "blatantly and without any authorization includ[ing] on their web site photographs copied from plaintiff's copyrighted catalogs and web sites." (*Id.* at 7).

- Matagorda Ventures and Birdsong sold plaintiff's watches "without the manufacturer's warranty," a practice that "is likely to anger or annoy the customer, and to damage plaintiff's goodwill." (*Id.* at 8–9).

- Matagorda Ventures and Birdsong published "misleading" text on the wristwatch.com web site, including a statement that they carry a complete line from each manufacturer. The complaint alleged that the defendants do not carry a complete line from each manufacturer. (*Id.* at 9).

The complaint stated that Movado Group had sent a demand letter to Birdsong in July 1997 complaining of the web site's content:

26. Moreover, on July 2, 1997, plaintiff's counsel sent a cease and desist letter, by fax and express mail, to defendant Birdsong, c/o Megasaurus Inc., informing defendants of the violations of law resulting from the operation of their web site and demanding that defendants cease the offending behavior. . . . Defendants did not respond in writing to this letter and continue their offending activity.

(*Id.* at 10).

The complaint asserted seven causes of action against Matagorda Ventures and Birdsong:

- *Federal trademark infringement.* "Defendant's unauthorized sale of watches bearing plaintiff's federally-registered trademarks infringes plaintiff's exclusive rights in its trademarks, because the public and the trade are likely to be confused, deceived, or mistaken regarding the source, quality, supervision, sponsorship, or approval of defendants' products, or to believe erroneously that defendants' products are . . . connected with plaintiff or that the quality of defendants' products is guaranteed, assured, and supervised by plaintiff." (*Id.* at 11).

- *Federal unfair competition.* "Defendants' unauthorized sale of watches bearing plaintiff's federally registered trademarks constitutes a false designation of origin, a false description of defendants' goods, and a false representation that defendants' goods are . . . connected with plaintiff or meet the same level of quality as plaintiff's products, or come within the same warranty as plaintiff's . . . Defendants have without authorization sold plaintiff's brand name watches with full knowledge of the . . . prior use of those trademarks by plaintiff, and defendants have used the trademarks in such manner as is likely to cause confusion or mistake among the public and the trade as to the source, approval, license, endorsement, authorization, sponsorship, or affiliation of defendants' goods . . . ." (*Id.* at 11–12).

- *Copyright infringement.* "The photographs on defendants' web site of

watches bearing plaintiff's mark are substantially similar if not identical to plaintiff's copyrighted photographs, and have been copied by defendants from plaintiff's photographs," and this conduct was "deliberate and willful within the meaning of section 504 of the Copyright Act of 1976. . . ." (*Id.* at 12).

- *State law trademark dilution and injury to business reputation.* "Defendants are offering for sale watches bearing plaintiff's trademarks but without a genuine warranty such that plaintiff has no control over the maintenance of quality of the watches distributed and sold by plaintiff . . . defendant's behavior is likely to dilute, blur, and tarnish the distinctive quality of the [plaintiff's] trademarks and to cause injury to plaintiff's business reputation. . . ." (*Id.* at 13–14).

- *Federal trademark dilution.* "Defendants' commercial use of [plaintiff's] marks in connection with watches not covered by appropriate manufacturer's warranties is likely to dilute the distinctive quality of plaintiff's famous trademarks, by lessening the capacity of these marks to exclusively identify and distinguish plaintiff and its goods." (*Id.* at 14).

- *State law deceptive trade practices.* "[D]efendants have engaged and are engaging in deceptive trade practices or acts in the conduct of a business, trade or commerce. . . ." (*Id.* at 15).

- *Common law unfair competition.* "Defendants' unauthorized offering for sale, distribution, advertising and promotion of plaintiff's brand name watches constitutes a false designation of origin and a false representation that defendants' products are guaranteed by . . . plaintiff or meet the same

level of quality as plaintiff's products. . . ." (*Id.* at 15–16).

On September 15, 1998, approximately twelve days after Movado Group filed its complaint, Feldman's office sent a letter to Travelers providing notice of the action and requesting a defense. (Docket Entry No. 31, Ex. K). On September 24, 1998, Travelers' Senior Technical Specialist, Nancy Kalinoglu, sent a letter to Feldman informing him that Travelers had determined that it had no duty to defend or indemnify Matagorda Ventures or Birdsong in the *Movado Group* lawsuit. (Docket Entry No. 31, Ex. L). Kalinoglu's letter pointed out that "as a condition precedent to coverage under the policy, Matagorda Ventures and James Dale Birdsong must give written notice to Travelers as soon as practicable when a claim is made." Kalinoglu's letter stated that "Matagorda had actual knowledge of the claim or 'suit' by plaintiff on July 2, 1997, but failed to give Travelers notice until September 21, 1998." The letter continued: ". . . we have confirmed that Matagorda attempted to resolve the matter on their own when they altered the Website at issue to conform to plaintiff demands." Kalinoglu's letter concluded by stating that "[t]his correspondence is not intended to be, nor shall it be construed as an exhaustive listing or discussion of policy terms, conditions, exclusions, or endorsements, facts or circumstances, or principles of insurance law which may further provide a basis to preclude coverage under the Travelers policy in this matter." (*Id.*).

Approximately six weeks after receiving this letter from Kalinoglu, Matagorda Ventures and Birdsong filed suit against Travelers in the 334th Judicial District Court of Harris County, Texas. Travelers timely removed to this court. In their second amended complaint, Matagorda Ventures and Birdsong seek declaratory judgment

that: 1) Movado Group's complaint states one or more claims subject to coverage under the Travelers Policies; 2) Travelers is obligated to defend Matagorda Ventures and Birdsong in the *Movado Group* lawsuit; 3) Travelers' conduct has created a conflict of interest such that it can no longer defend Matagorda Ventures and Birdsong in the *Movado Group* lawsuit, allowing Matagorda Ventures and Birdsong to provide their own defense at Travelers' expense; and 4) Travelers is obligated to reimburse Matagorda Ventures and Birdsong for all defense costs incurred in defending the *Movado Group* lawsuit from September 21, 1998. (Docket Entry No. 12, ¶ 17). Matagorda Ventures and Birdsong also seek damages sustained as a result of Travelers' alleged breach of its insurance policies.

Both parties have moved for summary judgment. Travelers contends that plaintiffs' recovery is barred by the "prior publication" exclusion, the "knowledge of falsity" exclusion, and the "failure to conform with advertised quality" exclusion in the Travelers Policies. Travelers also argues that Matagorda Ventures and Birdsong should be precluded from recovery due to their failure to provide notice of the claims against them until approximately fourteen months after Birdsong received the "cease and desist" letter from the Movado Group. Matagorda Ventures and Birdsong argue that, as a matter of law, the exclusions do not apply, and that they had no duty to notify Travelers until the *Movado Group* lawsuit was filed in September 1998.

The following motions are also pending: plaintiffs' motion for leave to file a third amended complaint; plaintiffs' motion for leave to file a fourth amended complaint; and plaintiffs' request for judicial notice in support of plaintiffs' opposition to defendant's motion for summary judgment.

The dispositive motions and other pretrial motions are analyzed below.

## II. The Applicable Legal Standards

### A. Summary Judgment Standards

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* FED.R.CIV.P. 56. Under FED.R.CIV.P. 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Norman v. Apache Corp.,* 19 F.3d 1017, 1023 (5th Cir.1994). The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case. *See Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc). If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response. *See id.*

When the moving party has met its Rule 56(c) burden, the nonmovant cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. *See McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.,* 66 F.3d 89, 92 (5th Cir.1995). The nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *See Little,* 37 F.3d at 1075 (citing *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548).

"[W]hen a district court denies a motion for summary judgment on the basis that there exist genuine issues of material fact, the district court is actually making two separate conclusions: 'First, the court has

concluded that the issues of fact in question are genuine, i.e., the evidence is sufficient to permit a reasonable factfinder to return a verdict for the nonmoving party. Second, the court has concluded that the issues of fact are material, i.e. resolution of the issues might affect the outcome of the suit under governing law.'" *Lemoine v. New Horizons Ranch & Ctr., Inc.*, 174 F.3d 629, 633 (5th Cir.1999) (quoting *Colston v. Barnhart*, 146 F.3d 282, 284 (5th Cir.1998)).

In deciding a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Rule 56 'mandates the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Little*, 37 F.3d at 1075 (quoting *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548).

**B. The Duty to Defend Standard**

■ Texas substantive law controls this diversity jurisdiction case. Under Texas insurance law, an insurer is required to defend any case in which at least some of the allegations in the pleadings potentially state a claim covered by the policy. *Lafarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 393 (5th Cir.1995); *Gulf Chem. & Metallurgical Corp. v. Associated Metals & Minerals Corp.*, 1 F.3d 365, 369 (5th Cir.1993). Even if a plaintiff's complaint alleges multiple claims or claims in the alternative, some of which are covered under the policy and some of which are not, the duty to defend arises if at least one of the claims in the complaint is facially within the policy's coverage. *Canutillo Indep.*

*Sch. Dist. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 99 F.3d 695, 701 (5th Cir.1996) (citing *Rhodes v. Chicago Ins. Co.*, 719 F.2d 116, 119 (5th Cir.1983)).

■ "An insurer's duty to defend is determined by the allegations in the pleadings and the language of the insurance policy." *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). "The duty to defend is determined by examining the latest amended pleading upon which the insurer based its refusal to defend the action." *Canutillo*, 99 F.3d at 701. Under the "eight corners" rule, the allegations in the pleadings are given a "liberal interpretation." *National Union Fire Ins. Co.*, 939 S.W.2d at 141.

"Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy. Stated differently, in case of doubt as to whether or not the allegations of a complaint against the insured state of cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in insured's favor."

*Id.* (quoting *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex.1965)). "'In reviewing the underlying pleadings, the court must focus on the factual allegations that show the origin of the damages rather than on the legal theories alleged.'" *Id.* (quoting *Merchants Fast Motor Lines, Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 919 S.W.2d 903, 905 (Tex.App.—Eastland 1996)). A court must accept the insured's "construction of an exclusionary clause as long as that construction is not unreasonable." *National Union Fire Ins. Co. of*

*Pittsburgh, Pa. v. Hudson Energy Co.,* 811 S.W.2d 552, 555 (Tex.1991).

■ The "complaint allegation" rule does not apply rigidly in every case. When the underlying complaint does not resolve the applicability of policy exclusions, for example, the parties may introduce extrinsic evidence to show whether a duty to defend exists. *See, e.g., State Farm Fire & Cas. Co. v. Wade,* 827 S.W.2d 448, 452 (Tex.App.—Corpus Christi 1992, writ denied) ("[w]hen the petition in the underlying lawsuit does not allege facts sufficient for a determination of whether those facts, even if true, are covered by the policy, the evidence adduced at the trial in a declaratory judgment action may be considered along with the allegations in the underlying petition"); *John Deere Ins. Co. v. Truckin' U.S.A.,* 122 F.3d 270, 272 (5th Cir.1997) (extrinsic evidence may be considered in determining existence of duty to defend where complaint allegations were insufficient to determine coverage under policy).

### III. The "First Publication" Exclusion

Travelers argues that the claims for which plaintiffs seek coverage fall within the "first publication" exclusion of the policies. The "first publication" exclusion states that "[t]his insurance does not apply to ... 'advertising injury' .... [a]rising out of the oral or written publication of material whose first publication took place before the beginning of the policy period ...". (Docket Entry No. 31, Ex. I, p. 518). If the underlying complaint in the *Movado Group* suit reveals that the claims resulted from the written materials first published before the beginning of the policy period, then the suit falls outside the scope of Travelers' coverage.

The *Movado Group* complaint contained a section entitled "Facts Common to All Claims for Relief." The section described in detail the facts Movado Group alleges as the basis for its action against Matagorda Ventures and Birdsong. The relevant factual allegations of the complaint are as follows:

- Matagorda Ventures and Birdsong offered for sale on the wristwatch.com web site watches bearing Movado Group's marks without Movado Group's authorization or approval. (Docket Entry No. 31, Ex. G, p 7).
- Matagorda Ventures and Birdsong placed on the wristwatch.com web site photographs copied from plaintiff's copyrighted catalogs and web sites. (*Id.*).
- Matagorda Ventures and Birdsong sold plaintiff's watches over the wristwatch.com web site without providing the original manufacturer's warranty. (*Id.* at 8–9).
- Matagorda Ventures and Birdsong placed misleading text on the wristwatch.com web site, including a statement that they carry a complete line from each manufacturer. (*Id.* at 9).

Each of these factual allegations involved the material posted on the wristwatch.com web site. Each of the seven causes of action asserted in the *Movado Group* complaint arises from one or more of these allegations. (Docket Entry No. 31, Ex. G, pp. 11–16).

■ The placement of this material on the wristwatch.com site is "written publication of material" within the meaning of the language of the "first publication" exclusion. Internet sites are a recognized means of "publication." *See, e.g., Van Buskirk v. New York Times Co.,* 2000 WL 1206732, *2 (S.D.N.Y.2000). The claims described in the *Movado Group* complaint arose directly from "written materials" posted on the wristwatch.com site. While it might be argued that the photographs

on the web site, which Movado Group asserts were copied from Movado catalogs, are better understood as "graphic" rather than as "written" material, the language of the Policies' exclusion encompasses the posting of these photographs as well. *Cf. Nortek, Inc. v. Liberty Mut. Ins. Co.*, 858 F.Supp. 1231, 1237 (D.R.I.1994) (catalog containing photographs of plaintiff's products could be considered "oral or written publication of material" within meaning of policy exclusion).

■ The critical issue is whether the web site content forming the basis for Movado Group's complaint was "first published before the beginning of the policy period." The *Movado Group* complaint contains the following paragraph:

> Moreover, on July 2, 1997, plaintiff's counsel sent a cease and desist letter, by fax and express mail, to defendant Birdsong, c/o Megasaurus Inc., informing defendants of the violations of law resulting from the operation of their web site and demanding that defendants cease the offending behavior ... Defendants did not respond in writing to this letter and continue their offending activity.

(Docket Entry No. 31, Ex. G, p. 10, ¶ 26). The complaint allegations make it clear that the material on the web site forming the basis of Movado Group's claims was first published before July 2, 1997. If the Travelers Policies period began after July 2, 1997, the "first publication" exclusion applies.

To resolve this issue, this court must examine the Travelers Policies to determine the effective dates. *See State Farm Fire & Cas. Co.*, 827 S.W.2d at 452. The Farmington Policy contains a renewal certificate defining the effective policy period

as March 1, 1997 to March 1, 1998. However, when this certificate was signed, the Policy did not cover Matagorda Ventures or Birdsong. Matagorda Ventures, Birdsong, and Megasaurus were made additional insureds by Policy endorsement on August 19, 1997.[1] (Docket Entry No. 31, Ex. J, p. 565). Plaintiffs do not dispute that Doohaluk "added Matagorda as a named insured under an existing Doohaluk-related Policy which provided coverage for other entities for which Doohaluk was charged with administrative responsibilities ... on August 19, 1997, less than two weeks after its corporate formation." (Docket Entry No. 50, plaintiffs' reply, pp. 2–3). Matagorda "became an insured under the Policy on August 19th." (*Id.* at 3). Neither party disputes that Matagorda Ventures and Birdsong were first insured under the Travelers Policies on August 19, 1997.

Given these undisputed facts, the "beginning of the policy period" for Matagorda Ventures and Birdsong was August 19, 1997, the date they were added to the Farmington Policy. This is the earliest date on which they could have brought a claim under the Travelers Policies. An injury occurring before this date would not be covered by the Policy. *See Snug Harbor, Ltd. v. Zurich Insurance*, 968 F.2d 538 (5th Cir.1992) (holding that there was no 'occurrence' during policy period when alleged injury to insured occurred two weeks before insured added itself to policy, notwithstanding the fact that the policy was already in effect with respect to another insured). Matagorda Ventures and Birdsong did not become insureds until approximately one month after Birdsong received the Movado Group demand letter

---

1. Matagorda and Megasaurus were specifically named as added insureds on the endorsement. Birdsong acquired the status of an insured by virtue of section II of the Policy, which provides that "[y]our 'executive officers' are insured, but only with respect to their duties as your officers and directors." (Docket Entry No. 31, Ex. I, p. 519).

complaining about the content of the wristwatch.com web site. The "first publication" exclusion applies to bar plaintiffs' claims.[2]

Plaintiffs argue that the "first publication" exclusion cannot apply to them because Matagorda Ventures was not incorporated until August 7, 1997 and did not assume operation of the wristwatch.com site until September or October 1997. Any publication before the beginning of the coverage period, plaintiffs contend, could only have been undertaken by Megasaurus, a "non-insured" that has not requested a defense in this case.[3] (Docket Entry No. 44, p. 10–11).

The court finds this argument unpersuasive. The distinction attempted between the activities of Matagorda and its predecessor corporation, Megasaurus, is of limited relevance. Birdsong was the president and sole owner of Megasaurus. In this capacity, he published the wristwatch.com web site, including the material giving rise to the *Movado Group* demand letter sent in July 1997. Even if Matagorda did not publish materials before the inception of the Policy period, Birdsong did so, as president of Megasaurus.

One purpose of the exclusion is to prevent all insured from obtaining coverage for risks already known to the insured. "The purpose of insurance is to protect insureds against unknown risks." *Two Pesos, Inc. v. Gulf Ins. Co.*, 901 S.W.2d 495,

502 (Tex.App.—Houston [14th Dist.] 1995, no writ). "[A]n insured cannot insure against something that has already begun and which is known to have begun." *Essex Insurance Co. v. Redtail Products, Inc.*, 1998 WL 812394, *4 (N.D.Tex.1998). (quoting *Appalachian Ins. Co. v. Liberty Mut. Ins.*, 676 F.2d 56, 63 (3d Cir.1982) (internal quotations omitted)).

Matagorda Ventures, through its two owners, Birdsong and Doohaluk, knew when it became insured that it was soon to assume the operation and management of the wristwatch.com site. Movado Group had already sent a demand letter to Birdsong, objecting to the Megasaurus web site's content and threatening legal action. By adding Matagorda Ventures and Birdsong as insureds on the Farmington Policy that Doohaluk had previously obtained for Watch Wholesalers, Inc., and by asking Travelers to provide insurance from the beginning of the Policy period, Matagorda Ventures and Birdsong in effect asked Travelers to provide insurance against a risk known to the additional insureds, but not the insurer. This is precisely the sort of circumstance the "first publication" exclusion was designed to prevent. The "first publication" exclusion and the "known loss" doctrine bar plaintiffs' claims. *See, e.g., Essex* 1998 WL 812394 at *4 (holding insurer owed insured no duty to defend trademark infringement

---

2. Even if March 1, 1997 was treated as the "beginning of the policy period" for Matagorda and Birdsong, the "first publication" exclusion would still apply. The summary judgment record contains undisputed evidence indicating that the relevant web site content was published before March 1997. Birdsong testified that the website offered Movado watches for sale, and contained pictures of Movado watches taken from Movado catalogs, in June 1996. (Docket Entry No. 31, Ex N, deposition of Birdsong, pp. 31, 63, 64).

3. The record indicates that plaintiffs' assertion that Megasaurus is a "non-insured" is incorrect. Megasaurus was added to the existing Doohaluk policy along with Matagorda Ventures. (Docket Entry No. 31, Ex. J, p. 565). Plaintiffs also assert that Megasaurus is not a defendant in the *Movado Group* suit, but the *Movado Group* complaint does identify Megasaurus as a defendant. (Docket Entry No. 31, Ex. G, p. 2, ¶ 5).

claim, on grounds of both "first publication" exclusion and "known loss" doctrine, when demand letter had been received prior to beginning of policy period); *Franklin v. Fugro–McClelland (Southwest), Inc.*, 16 F.Supp.2d 732 (S.D.Tex.1997) (when insureds failed to notify insurers of prior accusations of trademark infringement at the time insurance was purchased, insurer was not bound to cover losses resulting from infringement claims) (cited in *Essex*, 1998 WL 812394 at *4–5).[4]

Plaintiffs argue that the "first publication" exclusion applies only in cases of reputation and privacy invasion torts. Another court has rejected a similar argument. In *Applied Bolting Technology Products, Inc. v. U.S. Fidelity & Guar. Co.*, 942 F.Supp. 1029 (E.D.Pa.1996), the court held that the "first publication" exclusion may potentially apply to any claim of "advertising injury." *See id.* at 1037–38 (holding that first publication exclusion applied to all offenses listed in policy's defini-

tion of "advertising injury," which would necessarily include any "advertising injury" properly alleged by plaintiff). Other courts that have considered the issue have reached a similar result. *See, e.g., Tradesoft Technologies, Inc. v. Franklin Mut. Ins. Co., Inc.*, 329 N.J.Super. 137, 746 A.2d 1078, 1084 (2000) (supporting reasoning of *Applied Bolting*); *Hugo Boss Fashions, Inc. v. Federal Ins. Co.*, 1999 WL 1072819, *1 (S.D.N.Y.1999) (same).[5]

Plaintiffs present two other arguments against the application of the "first publication exclusion," neither of which the court finds persuasive. First, plaintiffs contend that because several of the copyrights on which Movado Group sued were not registered in July 1998, Movado Group's cause of action for copyright infringement did not arise until after the beginning of the coverage period for the Travelers' Policies. The relevant question for the exclusion, however, is not when the

---

4. The language of the "first publication" exclusion also appears to contradict the argument that the exclusion is defeated by the fact that Megasaurus, not Matagorda, published the web site before the policy period began. The exclusion states that the policy excludes coverage for advertising injury arising from "material first published before the beginning of the policy period." It does not state that the material must have been first published by the same party making the claim. In this respect, it differs from the policy's "knowledge of falsity" exclusion, for example, which bars coverage for injury "arising out of oral or written publication of material, *if done by or at the direction of the insured* with knowledge of its falsity." (emphasis added) (Docket Entry No. 31, Ex. I, p. 517).

5. Plaintiffs request judicial notice of several Insurance Service Office ("ISO") documents relating to the history of comprehensive general liability policies. The court takes judicial notice of these documents, but they do not alter the court's decision. The documents attempt to show that the exclusion's reference to "oral or written material" recalls the use of

this term in the policy definition of "advertising injury," where the term is used as a modifier only for the two subparts of the definition referring to reputation and privacy invasion. This argument is virtually identical to that addressed and rejected in *Applied Bolting*. As Judge VanArtsdalen stated in that case, " '[a]dvertising injury' is defined by the four, not two, offenses expressly set forth in the policy ... The first-publication exclusion bars coverage for 'advertising injury ... [a]rising out of oral or written publication of material whose first publication took place before the beginning of the policy period' ... The exclusion must be read to give effect to the plain meaning of 'advertising injury.' When that is done, it is certainly irrelevant that some of the language in the exclusion happens to match some of the words in subparts (a) and (b) of the definition of "advertising injury" but not match some of the language in subparts (c) and (d). Accordingly, I find that the first-publication exclusion applies to all of the offenses listed in the four-subpart definition of 'advertising injury'...." *Applied Bolting*, 942 F.Supp. 1029, 1037 (E.D.Pa.1996).

claim first became actionable, but when the material giving rise to the claim was first published. The copyright infringement claim arose from "material whose first publication took place before the beginning of the policy period." (Docket Entry No. 31, Ex. I, p. 518).

Second, plaintiffs argue that even if the "first publication" exclusion applies to some of the *Movado Group* claims, other *Movado Group* claims are not subject to the exclusion, triggering the duty to defend. If some of the causes of action alleged in the *Movado Group* suit were not subject to the exclusion or otherwise outside the scope of coverage, Travelers would have a duty to defend the entire lawsuit. *See Canutillo Indep. Sch. Dist. v. National Union Fire Ins. Co. of Pittsburgh, Pa.,* 99 F.3d 695, 701 (5th Cir.1996) (citing *Rhodes v. Chicago Ins. Co.,* 719 F.2d 116, 119 (5th Cir.1983)). However, all the causes of action asserted in the *Movado Group* complaint arose from the content of, and information posted on, the wristwatch.com web site. The material of the web site constitutes the "written material" first published before the beginning of the policy period. All of the *Movado Group* claims are subject to the exclusion. Travelers owes plaintiffs no duty to defend.

Because this court determines that the "first publication" exclusion applies to preclude the duty to defend plaintiffs in the *Movado Group* lawsuit, this court does not reach the other contentions the parties raise in their motions for summary judgment.

## IV. Plaintiffs' Motions for Leave to File Third and Fourth Amended Complaints

Matagorda Ventures and Birdsong have also moved for leave to file third and fourth amended complaints. In the third amended complaint, plaintiffs reallege their original claims and add claims for negligent misrepresentation, fraud, breach of duty of good faith and fair dealing, violation of the Texas Deceptive Trade Practices Act, and violation of the Texas Insurance Code. (Docket Entry No. 33). Matagorda Ventures and Birdsong argue that in the course of discovery, they found new information supporting their original claims and the additional claims. They do not describe this new information and make no other additional factual allegations beyond those described in their second amended complaint.

In the proposed fourth amended complaint, plaintiffs reassert the causes of action introduced in the third amended complaint and add a demand for defense and indemnification for a new lawsuit filed against them by Swatch Group, Inc. This suit, styled *Swatch Group (US) Inc. v. Matagorda Ventures, Inc. et al.,* No. 00–CV–3694, was filed on May 16, 2000, in the United States District Court for the Southern District of New York, and names as defendants Matagorda Ventures and Watch Wholesalers. The proposed fourth amended complaint seeks to add Watch Wholesalers as a plaintiff in the present litigation. (Docket Entry Nos. 55, 56).

Federal Rule of Civil Procedure 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires." Although Rule 15 "evinces a bias in favor of granting leave to amend," it is not automatic. *Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594, 598 (5th Cir. 1981); *Wimm v. Jack Eckerd Corp.,* 3 F.3d 137, 139 (5th Cir.1993). In deciding whether to grant leave to file an amended pleading, the district court may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue

prejudice to the opposing party, and futility of amendment. *See Wimm*, 3 F.3d at 139 (citations omitted).

■ Each of the additional causes of action in the proposed third amended complaint stems from Travelers' allegedly wrongful failure to defend or indemnify plaintiffs in the *Movado Group* lawsuit. The proposed third amended complaint adds claims of breach of extra-contractual duties arising from the same facts alleged as the basis of the alleged breaches of contract asserted in the second amended complaint. Under Texas law, extra-contractual tort claims under the Texas Insurance Code and the DTPA require a showing that an insurer breached a duty of good faith and fair dealing. *See Lawson v. Potomac Ins. Co.*, 1998 WL 641809 at *4 (N.D.Tex. Sept.14, 1998) (citing *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 460 (5th Cir.1997)). An insurer "breaches its duty of good faith and fair dealing by denying a claim when the insurer's liability has become reasonably clear." *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex.1998). Travelers' liability to defend the *Movado Group* lawsuit was not "reasonably clear." [6]

■ Plaintiffs' proposed claim of negligent misrepresentation is also without merit. In order for a tort duty to arise out of a contractual duty, in this case, negligent failure to perform a contract, the tort liability must arise "independent of the fact that a contract exists between the parties." *Higginbotham*, 103 F.3d at 460 (quoting *United Serv. Auto. Assn. v. Pennington*, 810 S.W.2d 777, 783 (Tex.App.— San Antonio 1991, writ denied)). Plaintiffs contend that Travelers is liable for negligent misrepresentation because Travelers breached its contract to provide coverage. Texas does not recognize a cause of action for "negligent refusal to provide coverage." *See French v. State Farm Insurance Co.*, 156 F.R.D. 159, 162 (S.D.Tex.1994).

This court has determined that Travelers had no duty to defend Matagorda Ventures and Birdsong in the *Movado Group* suit. Filing the proposed third amended complaint to add claims of breaches of extra-contractual duties would be futile; this court denies plaintiffs' motion for leave on this basis.[7] *See Emory v. Texas State Bd. of Medical Examiners*, 748 F.2d 1023, 1027 (5th Cir.1984) (district court need not grant leave to amend a complaint if the amendment is futile or subject to dismissal); *Cf. Lampasas v. Spring Center, Inc.*, 988 S.W.2d 428, 437 (Tex.App.— Houston [14th Dist.] 1999, no writ) (denying leave to amend petition when new variations introduced in second petition were composed of elements already challenged and addressed in defendants' motion).

6. It is irrelevant that the reason that Travelers initially refused coverage—lack of timely notice—differs from the basis for this court's finding that no coverage obligation existed. *See Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 340–41 (Tex.1995) (insurer's reliance on a different, perhaps erroneous, reason for denying coverage held not dispositive; issue was whether, based upon the facts existing at the time of the denial, a reasonable insurer would have denied the claim).

7. Plaintiffs' motion for leave to file their third amended complaint also came at a late stage in this litigation. The motion was filed approximately one year and two months after the filing of the second amended complaint, and approximately four months after the thrice-extended general discovery deadline. (Docket Entry Nos. 12, 17, 19, 23, 33). The motion was filed on the same day Travelers filed its motion for summary judgment. (Docket Entry No. 29). The untimeliness of the motion, given its repetition of the same facts contained in the previous complaint, provides an additional ground for the court's denial.

The proposed fourth amended complaint involves a demand for coverage for a new lawsuit and presents a different case. This new lawsuit was filed by Swatch Group in May 2000, after Matagorda Ventures and Birdsong had filed their second amended complaint and after they had moved for leave to file their third amended complaint. Plaintiffs apparently did not receive a demand letter from the Swatch Group before the beginning of the Travelers Policies coverage period. The record does not reveal whether Matagorda Ventures, Watch Wholesalers, or Birdsong published material implicated in the *Swatch Group* lawsuit before the beginning of the Policy period, or if so, whether all the claims in the *Swatch Group* suit arose from the publication of this material. The applicability of the "first publication" exclusion and the "known loss" doctrine to the *Swatch Group* claims is unclear.

Plaintiffs' claim for coverage in the *Swatch Group* lawsuit raises a distinct set of factual issues in a two-year old case which has, to this point, involved only the question of whether Travelers owes a duty to defend the *Movado Group* lawsuit. Plaintiffs' motion for leave to file a fourth amended complaint comes after over two years of proceedings, well after the expiration of all discovery deadlines, and at a time when both sides have summary judgment motions, responses, and replies—all based on the current pleadings—pending before this court. Under these circumstances, it is within the discretion of this court to deny plaintiffs' motion for leave to amend. *See Overseas Inns S.A.P.A. v. United States*, 911 F.2d 1146, 1151 (5th Cir.1990) (not an abuse of discretion for district court to deny leave to amend complaint, when motion came two and a half years after commencement of action, summary judgment motions on current pleadings had been filed, and motion for leave to amend was potentially an attempt to avoid

summary judgment). Plaintiffs' motion to amend in order to assert a new claim based on an alleged duty to provide a defense in the *Swatch Group* lawsuit, and to add to this lawsuit a party being sued in the *Swatch Group* lawsuit, is DENIED.

## V. Conclusion and Order

This court GRANTS Travelers' motion for summary judgment; DENIES Matagorda Ventures' and Birdsong's motion for partial summary judgment; GRANTS Matagorda Ventures' and Birdsong' s request for judicial notice; DENIES Matagorda Ventures' and Birdsong' s motions for leave to file the third amended complaint; and DENIES Matagorda Ventures' and Birdsong's motion for leave to file a fourth amended complaint.

This court ORDERS Travelers to submit a proposed form of judgment within ten days from the date this Memorandum and Order is entered.

### MEMORANDUM AND ORDER

Matagorda Ventures, Inc. and James Dale Birdsong, Jr., have moved for reconsideration of this court's ruling on the cross-motions for summary judgment. In that ruling, this court granted Travelers' motion for summary judgment and denied Matagorda Ventures's and Birdsong's motion. (Docket Entry No. 61). After reviewing the motion to reconsider, the response, the reply, and the applicable law, this court DENIES the motion to reconsider. Plaintiffs' main contentions are addressed below.

### I. Standard of Review

Plaintiffs characterize their motion for reconsideration as filed under Federal Rule of Civil Procedure 54. Under Rule 54(b), this court has discretion to revise its orders prior to entry of final judgment.

"Any order which ... adjudicates fewer than all the claims or rights or liabilities of fewer than all the parties ... is subject to revision at any time before the entry of [final] judgment." FED.R.CIV.PRO. 54(b). A final judgment in this case has not yet been entered. Plaintiffs' motion is not filed under Rules 59 or 60, which apply only to final judgments. *See* FED.R.CIV. PRO. 59, 60; *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1472 (4th Cir.1991). This court's order signed on December 7, 2000, was an interlocutory order, subject to revision, on motion or *sua sponte*, before entry of a final judgment. This court addresses plaintiffs' principal claims on the merits.

## II. The Issue of the Scope of the First Publication Exception

In their motion to reconsider, plaintiffs renew their argument, rejected by this court in its original ruling, that the "first publication" exclusion applies only to "advertising injuries" arising from the publication of material that is slanderous, libelous, or disparaging, or that violates privacy. Plaintiffs acknowledge that several other courts have rejected this same argument and held that the "first publication" exclusion also applies to the other two sources of "advertising injury" identified in the Policy language, misappropriation and infringement. *See, e.g., Applied Bolting Technology Products, Inc. v. U.S. Fidelity & Guar. Co.*, 942 F.Supp. 1029 (E.D.Pa.1996); *Tradesoft Technologies, Inc. v. Franklin Mut. Ins. Co., Inc.*, 329 N.J.Super. 137, 746 A.2d 1078, 1084 (2000) (supporting reasoning of *Applied Bolting* ); *Hugo Boss Fashions, Inc. v. Federal Ins. Co.*, 1999 WL 1072819, *1 (S.D.N.Y.1999) (same).

The Policy defined "advertising injury" as injury caused by specified offenses "committed in the course of advertising your goods, products, or services." A covered "advertising injury" must arise out of one or more of four specified offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

(Docket Entry No. 31, Ex. I, p. 524, 26).

The "first publication" exclusion states: "[t]his insurance does not apply to: 'advertising injury' ... [a]rising out of the oral or written publication of material whose first publication took place before the beginning of the policy period...." (Docket Entry No. 31, Ex. I, p. 518).

In holding that the first publication exclusion covers all of the four offenses from which an advertising injury can arise, this court quoted from an opinion involving identical policy language, *Applied Bolting*. That opinion stated as follows:

'[a]dvertising injury' is defined by the four, not two, offenses expressly set forth in the policy ... The first-publication exclusion bars coverage for 'advertising injury ... [a]rising out of oral or written publication of material whose first publication took place before the beginning of the policy period' ... The exclusion must be read to give effect to the plain meaning of 'advertising injury.' When that is done, it is certainly irrelevant that some of the language in the exclusion happens to match some of the words in subparts (a) and (b) of the definition of "advertising injury" but not match some of the language in subparts

(c) and (d). Accordingly, I find that the first-publication exclusion applies to all of the offenses listed in the four-subpart definition of 'advertising injury'....

*Applied Bolting,* 942 F.Supp. 1029, 1037 (E.D.Pa.1996)

This court continues to find this reasoning, and the plain meaning on which it rests, persuasive. In the Travelers Policy, as well as in the insurance policy at issue in *Applied Bolting,* the "first publication" exclusion placed the term "advertising injury" in quotation marks. This punctuation sets the term off as a defined term in the Policy. The "Definitions" section of the Policy specifically defines "advertising injury" as injury arising from four specified categories of offenses; not two. Two of the four listed offenses are limited to "publication of oral or written material"; the other two listed offenses, misappropriation and infringement, include both published and nonpublished forms.

Under the Policy, "advertising injury" can arise from misappropriation or infringement without the necessity of publication; "advertising injury" arising from slander, business disparagement, or invasion of privacy is limited to that arising from publication of oral or written material. The offenses of misappropriation and infringement may give rise to covered "advertising injury," whether or not the alleged misappropriation or infringement is in the form of published materials. This broader coverage for "advertising injury" arising from misappropriation or infringement, extending to published material as well as other forms, is consistent with the

application of the first publication exclusion.

When, as here, the alleged misappropriation arises from written published materials, the first publication exclusion applies. If the misappropriation or infringement does not arise from the publication of oral or written material, it would still fall within the Policy definition of "advertising injury," but the first publication exclusion would be irrelevant and inapplicable.

Plaintiffs' proffered interpretation makes the Policy inconsistent. Under plaintiffs' approach, the Policy would cover misappropriation arising from oral or written publication of materials, but would not exclude coverage even if the oral or written publication took place before the Policy period began. Plaintiffs' approach would be reasonable if the Policy limited "advertising injury" arising from misappropriation or infringement to nonpublished materials. If the Policy only covered nonpublished materials that misappropriate or infringe, then the first publication exclusion should not apply. However, that is not what the Policy says. Instead, the Policy provides that "advertising injury" can arise from both published and nonpublished materials that misappropriate or infringe. When the "injury" arises from published materials, the plain meaning of the Policy makes the first publication exclusion applicable. This interpretation is consistent with the plain meaning of the Policy and with the words and punctuation used to convey that meaning.[1]

---

**1.** Plaintiffs assert that this court's holding is contrary to the holding of another case in the Southern District of Texas, *Martin's Herend Imports, Inc. v. Twin City Fire Ins. Co.,* 2000 U.S.Dist. Lexis 8690 (S.D.Tex.2000). Although *Martin's Herend* did express the view that *Irons Home Builders Inc. v. Auto–Owners Ins. Co.,* 839 F.Supp. 1260 (E.D.Mich.1993)

was more persuasive than the *Applied Bolting* case, *Martin's Herend* did not call for analysis of the specific issues at issue in the present case, and such analysis was not provided. *Martin's Herend* involved neither an interpretation of "advertising injury" nor an interpretation of a "first publication" exclusion. Instead, it involved an interpretation of a

Plaintiffs contend, in the alternative, that even if their interpretation is not the best interpretation of the exclusion, the fact that some district courts have held in favor of their position makes the Policy "ambiguous" as a matter of law because it is "susceptible to more than one reasonable interpretation." (Docket Entry No 62, p. 5). Plaintiffs contend that the Policy should therefore be construed in favor of their position, citing the rule that a court must accept the insured's "construction of an exclusionary clause as long as that construction is not unreasonable." *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.,* 811 S.W.2d 552, 555 (Tex.1991).

■ A split of authority among courts as to the interpretation of policy language does not necessarily make that language ambiguous. *See H.E. Butt Grocery Co. v. National Union Fire Ins. Co. of Pittsburgh, Pa.,* 150 F.3d 526, 534 (5th Cir. 1998); *Union Pacific Resources Co. v. Aetna Cas. & Sur. Co.,* 894 S.W.2d 401, 405 (Tex.App.—Fort Worth 1994, writ denied) (holding that conflicting legal authority concerning scope of coverage was insufficient to create an "ambiguity" in the policy). This court declines to adopt plaintiffs' suggestion that the presence of split authority on this question necessarily creates ambiguity. This court concludes that the "first publication" exclusion applied to all the forms of "advertising injury" defined in the Travelers Policy. The motion for reconsideration on this basis is DENIED.

### III. The Issue of the Applicability of the "Known Loss" or "Fortuity" Doctrine

Plaintiffs take issue with this court's characterization of the "known loss" or

"fortuity" doctrine. Plaintiffs assert that the "known loss" doctrine "protects against previously incurred losses, not potentially previously incurred, and not yet legally adjudicated or even legally pursued, claims." (Docket Entry No. 62, p. 16). Plaintiffs' argument is not persuasive.

A virtually identical argument was addressed and rejected in *Franklin v. Fugro–McClelland (Southwest), Inc.,* 16 F.Supp.2d 732, 735 (S.D.Tex.1997). In *Franklin,* the court stated:

> ... in the case at bar, Defendants' activities for which they claim liability coverage began well before their insurance policy was purchased. Defendants' alleged wrongful activities began in 1991, or at the latest in 1992, but the insurance policy was not purchased until 1993. Therefore, the "loss in progress" doctrine precludes coverage for the claims asserted against them.

> Defendants argue, however, that this doctrine should not apply here because, at the time their insurance policy was purchased, they did not have a known loss. Instead, they contend, since the underlying dispute had not yet been adjudicated, at the time the policy was purchased they had merely a potential loss. Defendants attempt to distinguish *Two Pesos* on the ground that, in that case, underlying liability had already been legally established by the time Two Pesos purchased its policy. The Court is not persuaded by this distinction. The *Two Pesos* court did not base its conclusion that a known loss had already occurred on the fact that the underlying lawsuit had been adjudicated. Instead, the court explained that "the risk of liability was no longer unknown because

---

"knowing or false publication" exclusion in the context of coverage for a "personal inju-

ry." *Id.* at 26–27.

injuries resulted when Two Pesos first copied Taco Cabana's trade dress." *Id.* (emphasis added). In other words, the court recognized that Two Pesos first knew of the allegedly covered loss at the time it performed its infringing actions, not at the time that infringement was adjudicated.

*Id.* at 735. *See also Essex Ins. Co. v. Redtail Products, Inc.,* 1998 WL 812394, *4 (N.D.Tex.1998) (supporting reasoning of *Franklin* ); *Westchester Fire Ins. Co. v. G. Heileman Brewing Co., Inc.,* 2000 WL 1875875, *10 (Ill.App.1st Dist.2000) (same).

As *Franklin* makes plain, the crucial issue is not whether liability had already been adjudicated against Matagorda Ventures and Birdsong for misappropriation when they became Policy insureds. Rather, "[t]he relevant inquiry is whether [the insureds] knew at the time they entered the insurance policy that they were engaging in activities for which they could possibly be found liable." *Id.* at 737. In this case, as in *Franklin,* the insureds began the activities for which they claim liability coverage before entering the insurance policy. After receiving a demand letter warning them of their potential liability, they then purchased the insurance at issue, without disclosing the demand letter or the underlying activities to the insurer. The motion for reconsideration on this basis is DENIED.

## IV. The Issue of Plaintiffs' Response to the Demand Letter

Plaintiffs suggest in their motion for reconsideration that this court has "silently ruled" that Megasaurus's efforts to address the concerns raised in the July 2, 1997 demand letter from Movado Group were "of no moment." (Docket Entry No. 62, p. 16–17). Because this court did not explicitly address the issue in its previous memorandum, it does so here.

Plaintiffs allege that they believed that their dispute with Movado Group had been resolved by August 1997, when they were added as insureds to the Travelers Policy. Plaintiffs argue that this belief relieved them of any duty to notify Travelers of the claims asserted in the Movado Group demand letter or of the activities that triggered the demand letter. The record and legal authorities contradict plaintiffs' argument.

Counsel for plaintiffs, Stewart Feldman testified that following his first conversation with Mark Englemann, representing Movado Group, in July 1997, Feldman recommended to Birdsong and Ronald Doohaluk that they change the wristwatch.com site. (Docket Entry No. 31, Ex. S, Deposition of Feldman, p. 23). Feldman testified that he telephoned Englemann again on August 15, 1997, but did not recall whether he actually spoke to Englemann on that occasion or merely left a voice mail message. (*Id.* at 28). Feldman stated that he told Englemann that his clients had "made substantive or significant ... changes to the web site," which he hoped "addressed all or most of [Englemann's] bona fide concerns," and that "[i]f there is anything else that is of any great concern to you, let me know." (*Id.*). The record does not reveal whether or how Englemann responded. Feldman acknowledged that "[i]t's not as if we reached agreements on all of the issues and it was resolved." (*Id.* at 50). The record contains no evidence of any written communication between Feldman and Englemann. It is undisputed that the Movado Group did not withdraw the demands it had asserted in its July 2, 1997 letter.

This record does not support the argument that plaintiffs resolved the dispute with the Movado Group by August 17, 1997, the date they obtained insurance coverage by becoming additional insureds on

the Policy. At most, the record shows that Feldman made an attempt to resolve the issue by one or two telephone conversations communicating that some undescribed changes had been made to the web site. As the court stated in *Franklin*, 16 F.Supp.2d at 737, n. 6, "[t]he court is not persuaded by Defendants' argument that because they had attempted to resolve the claim, they did not need to inform the Insurer of the potential claim and nevertheless later be covered for activities that were continuations of those on which [the underlying plaintiff's] initial accusations were based."

Plaintiffs assert that this court has *"de facto,* determined that, once Megasaurus, Inc. was alerted to potential problems concerning Movado via letter, no entity, formed or unformed, related or unrelated, could ever obtain advertising insurance for itself as a result of wristwatch.com's operations." (Docket Entry No. 62, pp. 17–18). This statement misstates this court's holding. This court addressed the consequences of facts shown in the summary judgment record. Undisputed facts showed that when plaintiffs became insureds, they did not inform Travelers of the potential claims asserted in the Movado Group demand letter. Undisputed facts showed that plaintiffs became additional insureds under the Policy, which covered advertising injury arising out of published material that misappropriated an advertising idea or style of doing business, but excluded coverage if the publication was before the Policy period began. Nothing in the holding based on the facts in the record precludes plaintiffs from obtaining insurance for "advertising injury" arising from material published after the Policy period began.

In addition, this court ruled only on the Movado Group claims in this lawsuit. This court noted with respect to the separate lawsuit filed by Swatch Group that "[t]he record does not reveal whether Matagorda Ventures, Watch Wholesalers, or Birdsong published material implicated in the *Swatch Group* lawsuit before the beginning of the Policy period ... the applicability of the 'first publication' exclusion and the 'known loss' doctrine to the *Swatch Group* claims is unclear." (Docket Entry No. 61, p. 33).

This court DENIES the motion for reconsideration on the basis that plaintiffs believed they had responded to the demand letter they received the month before they became additional insureds on the Policy.

## V. The Relationship of Movado Group's Causes of Action to the Material on the Web Site

Plaintiffs dispute that "all of the causes of action asserted in Movado Group complaint arose from the content of, and information posted on, the wristwatch.com site." Plaintiffs attempt to distinguish between "advertising injuries" arising from the sale of watches and "advertising injuries" arising from the content of, and information posted on, the wristwatch.com web site.

The undisputed evidence in the summary judgment record showed that all the watches plaintiffs sold relevant to this lawsuit were sold by way of the wristwatch.com site. The record discloses no other form of advertisement used to sell the watches. The Policy provides coverage for advertising injury "caused by an offense committed in the course of *advertising* your goods, products, or services...." (Docket Entry No. 31, Ex. I, p. 517) (emphasis added). If plaintiffs are arguing that the *Movado Group* complaint alleges injuries from the sale of watches not resulting from advertising, such allegations would appear to be outside the Poli-

cy. This court DENIES the motion for reconsideration on this ground.

## VI. Conclusion

This court DENIES Matagorda Ventures's and Birdsong's motion to reconsider. This court ORDERS Travelers to submit a proposed form of judgment within ten days from the date this Memorandum Order is entered.