**REVISED**

United States Court of Appeals,

Fifth Circuit.

No. 97-10025.

JOHN DEERE INSURANCE COMPANY, Plaintiff-Counter Defendant-Appellee,

v.

TRUCKIN' U.S.A., et al., Defendants,

Transport Insurance Company, Defendant-Counter Claimant-Appellant.

Sept. 19, 1997.

Appeal from the United States District Court for the Northern District of Texas.

Before KING, DUHÉ and WIENER, Circuit Judges.

DUHÉ, Circuit Judge:

Transport Insurance Company appeals the district court's grant of John Deere Insurance Company's motion for summary judgment on the issue whether John Deere had a duty under its liability insurance policy to defend, indemnify or reimburse either Transport or Transport's insured, Copp Trucking. Transport also appeals the district court's denial of its own motion for summary judgment on the same issues. For the reasons that follow, we affirm.

I

This appeal arises out of a traffic accident involving a tractor-trailer rig and an automobile occupied by the Kurocik family. Mr. and Mrs. Kurocik died, and their heirs ("plaintiffs") sued, *inter alia,* Mr. Tompkins, the driver of the rig; his

1

employer, Harold Suits, individually and d/b/a Truckin' U.S.A.; Ronald Schmoe, Truckin' U.S.A.'s other principal owner; and Copp Trucking, Inc., the company whose name appeared on the tractor rig. Truckin' USA has a motor carrier insurance policy ("Policy") with Appellee John Deere Insurance Co. ("Deere"). Copp Trucking is insured by Appellant Transport Insurance Company ("Transport").

Transport settled all claims asserted by the Kurocik heirs against both its insured, Copp Trucking, and Tompkins (but only to the extent Tompkins was considered an employee of Copp Trucking) for $600,000. Thereafter, the Kurocik heirs amended their petition to drop Copp Trucking as a defendant and to allege that Tompkins was an employee of Suits, Schmoe, and Truckin' U.S.A. and that there was a "working agreement" between those three and Copp Trucking.

Transport demanded that Deere reimburse it for the $600,000 settlement on Copp Trucking's behalf, alleging that because Copp Trucking was an insured under the Policy, Deere therefore had a duty to defend and indemnify Copp and a concomitant duty to reimburse Transport for the settlement. Deere brought this action seeking a declaratory judgment providing that it had no duty to defend, indemnify, or reimburse either Copp Trucking or Transport because (1) the rig involved in the accident was not a "covered auto" under its Policy; and (2) Copp Trucking was not an "insured" under its Policy. Transport counterclaimed for a declaratory judgment providing that the Deere Policy was the primary, or at least co-primary, policy and that Deere was therefore obligated to

2

(1) defend Copp Trucking in the Kurocik lawsuit; and (2) indemnify or reimburse Transport for amounts paid in settlement on Copp Trucking's behalf.

Both parties moved for summary judgment. The district court granted Deere's motion, denied Transport's motion, and dismissed Transport's counterclaim with prejudice. Transport now appeals.

II

Transport contends first that the district court violated the "complaint allegation rule" by considering evidence extrinsic to the pleadings in determining whether Deere had an obligation under the Policy to defend or indemnify either Copp Trucking or Transport. Second, Transport argues that the district court erred in determining the tractor-trailer rig was not a "covered auto" under the Policy. Third, Transport maintains that the district court erred in holding that neither Copp Trucking nor Transport qualified as "insureds" under the Policy. Finally, Transport contends the district court erred in holding that the MCS-90 endorsement in the Policy did not impose on Deere a duty to indemnify or reimburse Copp Trucking or Transport.

This Court reviews a grant of summary judgment *de novo*, applying the same standard as that applied by the district court. *See Floors Unlimited, Inc. v. Fieldcrest Cannon, Inc.*, 55 F.3d 181, 183-84 (5th Cir.1995).

The "complaint allegation rule," under Texas law, requires that an insurer's duty to defend be determined solely from the face of the plaintiff's complaint in the underlying action, without

3

reference to facts outside the four corners of the complaint. *See Rhodes v. Chicago Ins. Co.,* 719 F.2d 116, 119 (5th Cir.1983). If the underlying complaint, however, does not allege facts, if taken as true, sufficient to state a cause of action under the policy, evidence adduced in a declaratory judgment action may also be considered. *See State Farm Fire & Cas. Co. v. Wade,* 827 S.W.2d 448, 452 (Tex.App.1992, writ denied); *Cook v. Ohio Cas. Ins. Co.,* 418 S.W.2d 712, 714-15 (Tex.Civ.App.1967, no writ). The "complaint allegation rule" does not apply here because the plaintiffs failed to allege facts in their underlying petition sufficient, even if true, to allow a determination of coverage.

The Policy provides that Deere:

> will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance, or use of a "covered auto."

Thus, to state a cause of action under the Policy, the plaintiffs must have alleged, *inter alia,* that the motor vehicle involved in the accident was one covered under the Policy. The plaintiffs' fifth amended complaint alleges that:

> said tractor/trailer rig had been furnished to Defendant Tompkins by Defendant [sic] by either Harold Suits, individually[,] and Ronald Schmoe, individually or doing business as Trucking [sic] U.S.A. The defendants, Harold Suits and Ronald Schmoe, had a working agreement with the Copp Trucking Co., Inc.

Allegations that the rig had been "furnished" to the defendants or that the defendants had a "working agreement" with Copp Trucking are insufficient to determine coverage under the Policy, even if

4

those allegations are taken as true.[1]  The district court was therefore correct both in holding the "complaint allegation rule" inapplicable and in considering evidence extrinsic to the pleadings to determine whether John Deere had a duty to defend or indemnify under the Policy.

## III

Transport contends the district court erred in holding the rig involved in the accident was not a "covered auto" under the Policy. Transport argues that the rig was "covered" under various provisions of the Policy.  A "covered auto" is one that, *inter alia,* is (1) specifically scheduled on the Policy;[2]  (2) a "temporary substitute auto";  (3) an "after-acquired auto";  or (4) an "undescribed trailer."

## A

Under the Policy, a "substitute auto" is:

> Any "auto" [that Truckin' U.S.A.] do[es] not own while used with the permission of its owner as a temporary substitute for a covered "auto" that is out of service because of [various reasons].

The district court, relying on extrinsic evidence, found that Truckin' U.S.A. owned the tractor in question and that therefore

---

[1]The plaintiffs alleged in their *fourth* amended complaint that Copp Trucking owned the tractor.  Even if we assume that this allegation would have been sufficient to create a duty in Deere to defend Copp Trucking, Transport cannot rely on it now.  Under Texas law, the court must refer to the *latest* of the amended pleadings in determining an insurer's duty to defend.  *Rhodes,* 719 F.2d at 119 ("[T]he duty to defend is determined by examining the latest, and only the latest, amended pleadings.").

[2]It is undisputed that the rig was not one of the vehicles "scheduled" under the Policy.

the tractor could not be a "substitute auto" under the Policy.[3]

The only evidence offered by Transport to dispute Truckin' U.S.A.'s ownership of the tractor was a portion of Harold Suits's deposition testimony in the underlying suit. Suits testified that Tompkins was "driving a Copp Trucking truck. I didn't have another truck of mine that said Truckin' U.S.A. on it to haul that." Suits's earlier deposition testimony indicated, however, that Suits had a practice of purchasing Copp Trucking rigs for Truckin' U.S.A. and leaving Copp's name on them until the end of the year.

The testimony on which Transport relies establishes nothing more than that the rig Tompkins drove was labeled "Copp Trucking" and has little or no relevance to *ownership* of the tractor. Transport's evidence was therefore insufficient to create a genuine issue of fact as to ownership of the tractor. The district court was therefore correct in holding that the rig was not a "substitute auto" under the Policy.

B

An "after-acquired auto" under the Policy is one that replaces an auto Truckin' U.S.A. previously owned, provided that Truckin' U.S.A. informs Deere within 30 days after acquisition that it wants coverage for the new vehicle. There was no evidence in the summary judgment record that Truckin' U.S.A. provided such notice to Deere as to the rig in question. Therefore, the district

---

[3]The court relied both on a certified copy of the application for certificate of title for the Peterbilt tractor, submitted by Deere to the Kansas Division of Vehicles, and on Harold Suits's interrogatory response.

court was correct in holding the rig was not an "after-acquired auto" under the Policy.

C

Under the Policy, the schedule of covered autos includes "any undescribed trailer, while in the care, custody, and control of the insured." Deere's Truckers Coverage Form, however, indicates that coverage extends:

> Only [to] those "autos" described in ITEM THREE of the Declarations for which a premium charge is shown (*and for Liability Coverage any "trailers" [Truckin' U.S.A.] do[es]n't own while attached to any power unit described in ITEM THREE*).

(emphasis added). The district court found that the second provision acted as a limitation on the first: i.e., the Policy provides coverage for "undescribed trailers" only if they are attached to a scheduled power unit. Since it was undisputed that the trailer here was not attached to a scheduled unit, the court determined that no duty to defend or indemnify arose on Deere's part under the "undescribed trailer" provision of the Policy. Transport contends this was error, arguing that the language in the schedule provides an independent basis for coverage under the Policy for "undescribed trailers, while in the care, custody, and control of the insured."

We need not reach the merits of Transport's claim. As the district court pointed out in a footnote to its Memorandum Opinion and Order, assuming, *arguendo,* that the Policy provides coverage under the "undescribed trailer" provision, Transport cannot benefit from such coverage. Transport and Copp Trucking would still not

7

qualify as "insureds" under the Policy.  *See* discussion *infra* Part IV. A finding that the trailer here was covered as an "undescribed trailer" would impose on Deere, arguably, only a duty to defend and indemnify its insured, Truckin' U.S.A., and not Copp Trucking or Transport.  Since neither Copp Trucking nor Transport can hope to qualify as "insureds" under the Policy by virtue of the "undescribed trailer" provision, we need not address Transport's arguments on that point.

IV

Transport contends the district court erred by holding that Copp Trucking was not an "insured" under the Policy.  An "insured" under the Policy includes, *inter alia,*:

> Anyone *liable* for the conduct of an "insured" described above but only to the extent of that liability.

(emphasis added).  Transport seeks to bring Copp Trucking (and thus itself, as Copp's insurer) under this class of "insureds" by making the following argument:  Copp Trucking was sued for damages arising out of the actions of Tompkins, a Truckin' U.S.A. employee; Tompkins' actions in the course and scope of his employment are imputed to Truckin' U.S.A. under agency principles;  Transport paid $600,000 on Copp Trucking's behalf to settle the claims;  thus, Copp Trucking's (and, by the same token, Transport's) "liability" is due to the actions of Truckin' U.S.A.;  Copp Trucking is therefore an "insured" under the Policy.[4]

_____

[4]Transport also argues that Copp Trucking is an "insured" under the Policy because it is the "owner" of a "covered auto." This argument fails because the district court correctly found that Truckin' U.S.A., and not Copp Trucking, was the owner of the

8

This argument fails because, contrary to Transport's assertions, neither Copp Trucking nor Transport was *legally* "liable" for the conduct of Truckin' U.S.A., its employees, or any other "insureds" under the Policy.[5] Copp Trucking and Transport *elected* to settle the Kurocik suit on Copp's behalf and on behalf of Tompkins (to the extent Tompkins was considered an employee of Copp Trucking); Transport, as Copp Trucking's insurer, funded this settlement. Neither choosing to settle nor funding that settlement, however, made Copp Trucking or Transport "liable" for the conduct of Truckin' U.S.A. or its employee, Tompkins, within the meaning of the Policy. The district court was therefore correct in holding that neither Copp Trucking nor Transport was an "insured" under the Policy.

V

Transport contends that the MCS-90 endorsement in the Policy requires Deere to indemnify Transport for the amounts paid in settlement of claims against Copp Trucking in the Kurocik suit. Deere included the MCS-90 endorsement in the Policy to comply with

---

tractor. *See supra* Part III.A.

[5]Transport attempts to rely on allegations in the Kurocik plaintiffs' fourth amended complaint that Tompkins was actually an employee of *both* Truckin' U.S.A. and Copp Trucking. Thus, Copp Trucking would qualify as an "insured" because it would be liable, under principles of agency law, for the conduct of Tompkins, an "insured" under the Policy. Transport cannot rely on these allegations, however. The court must consider the latest amended pleading in determining an insurer's duty to defend or indemnify. *Rhodes,* 719 F.2d at 119. The Kurociks' *fifth* amended complaint (the latest) does not allege that Tompkins was an employee of Copp Trucking.

9

the financial responsibility requirements of 49 U.S.C. § 10927,[6] which codifies the Motor Carrier Act of 1980. The relevant portion of the MCS-90 endorsement states:

> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay within the limits of liability described herein, any final judgment recovered against the *insured* for public liability resulting from negligence in the operation, maintenance or use of motor vehicles ... regardless of whether or not each motor vehicle is described in the policy and whether or not such negligence occurs on any route or in any territory to be served by the insured or elsewhere.

(emphasis added). *See* 49 C.F.R. § 387.7 (1995). Because Copp Trucking is not an "insured" under the Policy, the MCS-90 endorsement provides no basis for relief. Where an insurance policy does not provide coverage for non-listed vehicles except to third-party members of the public through operation of the endorsement, the policy provides no coverage for purposes of disputes among insurers over ultimate liability. *See Canal Ins. Co. v. First General Ins. Co.,* 889 F.2d 604, 611 (5th Cir.1989).

## VI

For the foregoing reasons, the decision of the district court is

AFFIRMED.

---

[6]Provisions similar to those contained in § 10927 are now contained in 49 U.S.C. § 13906 (1997).