United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 22, 2004**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 02-21254

NORTHFIELD INSURANCE CO.,

Plaintiff--Counter-Defendant--Appellant,

versus

LOVING HOME CARE, INC., SHEILA MARTHA DANIELS, AND
RONNIE RANDALL DANIELS,

Defendants-Appellees,

WILLIAM MAURICE BARROWS AND CATHERINE CELMER BARROWS,
INDIVIDUALLY AND AS HEIRS AND LEGAL REPRESENTATIVES OF BIANCA
LILLIAN BARROWS, DECEASED,

Defendants--Counter-Claimants--Appellees.

Appeal from the United States District Court
For the Southern District of Texas

Before REAVLEY, DAVIS, and DeMOSS, Circuit Judges.

DeMoss, Circuit Judge:

Plaintiff--Counter-Defendant--Appellant--Cross-Appellee
Northfield Insurance Co. ("Northfield") seeks reversal of the
district court's final judgment that declared Northfield had a duty
to defend Defendants-Appellees Loving Home Care, Inc. ("LHC") and
Sheila and Ronnie Daniels (the "Daniels") under the commercial
professional liability ("CPL") part of the insurance policy issued

to LHC by Northfield, in the underlying tort suit by Defendants-Counter-Claimants--Appellees--Cross-Appellants William and Catherine Barrows (the "Barrows") against LHC and the Daniels. The Barrows cross-appeal, arguing this Court has no jurisdiction to review the district court's decision not to determine Northfield's duty to indemnify LHC and the Daniels at this time, and if there is jurisdiction, that such duty is properly nonjusticiable at this time. Because we find the district court properly concluded Northfield owed LHC and the Daniels a duty to defend in the underlying tort suit filed against them by the Barrows, and that Northfield's duty to indemnify LHC and the Daniels is presently nonjusticiable, we AFFIRM the decision of the district court.

## BACKGROUND

This appeal stems from a dispute about the duty of an insurer to defend its insured in an underlying negligence suit in Texas state court. The Daniels ran LHC, a business that provided nannies for in-home child care. Celia Giral ("Giral") was employed by LHC and worked as a nanny for the Barrows. On October 13, 1997, Giral was caring for the Barrows' baby daughter, Bianca, when Bianca was fatally injured. Bianca died at the hospital on the evening of October 14, 1997. The Harris County coroner ruled Bianca's death a homicide, as the autopsy findings noted that Bianca's injuries included multiple skull fractures, brain hemorrhages, and blood behind the eyes. The cause of death listed was "cranio-cerebral

2

injuries due to blunt force trauma of the head." On May 22, 1998, a Texas state court jury found Giral guilty of first-degree felony injury to a child in the death of Bianca Barrows; Giral was sentenced to seven years in prison.

The Barrows filed the underlying suit against several parties, including LHC and the Daniels. The Barrows' Third-Amended Petition, their live petition, stated in part:

> On October 14, 1997, Bianca died at the age of 3 ½ months. Bianca's fatal injuries were proximately caused by the negligence of Celia Giral, a nanny from Defendant Loving Home Care, Inc. Giral negligently dropped Bianca, and/or negligently shook Bianca, causing severe head injuries that resulted in the infant's death. In the alternative, Plaintiffs would show that Giral was reckless and/or criminally negligent as defined by Texas Penal Code Sec. 6.03.

> On September 9, 1997, Cathy Barrows had signed a six-month Service Agreement, under which Mrs. Barrows agreed to pay $377.00 per week to Loving Home Care for Celia Giral, a Class A caregiver. This Service Agreement stated, "All in-home care providers shall be employees of Loving Home Care and will at all times remain subject to the supervision of Loving Home Care." [incorporation by reference omitted].

> Celia Giral was the nanny provided by Loving Home Care, Inc. to care for Bianca. Loving Home Care, Inc. entered a written employment agreement with Celia Giral dated September 17, 1997. [incorporation by reference omitted]. . . .

> On Wednesday, September 17, 1997, Celia Giral began working for the Barrows, "caring" for their infant Bianca. On Monday, October 13, 1997, Mrs. Barrows left Bianca with Giral and drove to work. When Mrs. Barrows left Bianca with Giral, Bianca was awake, active, smiling, and giggling. Mrs. Barrows arrived at work at approximately 8:15 a.m. At approximately 8:45 a.m., Mrs. Barrows received a telephone call from Giral. Giral told Mrs. Barrows that she had to call 911 because Bianca would not wake up. A paramedic then got on the phone and

3

told Mrs. Barrows that Giral claimed to have fallen while carrying the baby. The paramedic told Mrs. Barrows that they were going to take Bianca to Hermann Hospital.

. . .

The occurrence, proximately caused by the negligence of Defendants, caused severe bodily injury to Bianca, that resulted in her death. At the hospital emergency room, Bianca was examined by doctors who discovered Bianca's skull was fractured, her brain was hemorrhaging, and she had blood behind her eyes. Giral claimed to investigators that she had accidently dropped the infant, then shook her in an attempt to revive her. Giral therefore admitted conduct that failed to meet the standard of care of an ordinarily prudent person acting under the same or similar circumstances, which therefore constituted negligence, and was the proximate cause of the occurrence and Bianca's bodily injury and death.

The Barrows had amended their petition to remove all allegations relating to Giral's criminal conviction and the intentional nature of her behavior. At the time of Bianca's death, LHC was covered by a two-part insurance policy (including both commercial general liability, "CGL," and CPL coverage) issued by Northfield. Under the terms of the policy, LHC and the Daniels requested defense and indemnification from Northfield in the underlying action.

Northfield defended under a reservation of rights, filing a declaratory judgment action in district court against LHC, the Daniels, and others. In the course of the declaratory judgment action, Northfield argued that it was not obligated to defend or indemnify LHC and the Daniels in the underlying action because of various exclusions in the policy. In particular, in Northfield's motion for summary judgment, it argued it had no duty to defend or indemnify LHC and the Daniels under the CGL part of the policy

4

because the "designated professional services" exclusion barred coverage for damages "due to the rendering or failure to render any professional service." Northfield also argued that it had no duty to defend or indemnify LHC and the Daniels under the CPL part of the policy, which provided coverage for damages "because of a negligent act, error or omission in the rendering of or failure to render professional services," because of two exclusions relating to "criminal acts" and "physical/sexual abuse." The criminal acts exclusion stated that coverage would not apply to "[a]ny damages arising out of any dishonest, fraudulent, criminal or malicious act or omission of any insured or 'employee.'" The physical/sexual abuse exclusion stated that coverage would not apply to "any damages arising out of" the following:

1.    The actual, alleged, or threatened physical abuse, sexual abuse or molestation by anyone.

2.    The investigation, hiring, training, placement, supervision, or retention of anyone who engages or has engaged in physical abuse, sexual abuse or molestation. This endorsement applies whether damages arise from an act or failure to act.

3.    The reporting of or failure to report to authorities any physical abuse, sexual abuse, or molestation.

The district court initially granted Northfield's motion for summary judgment in its entirety, ruling that the professional services exclusion applied so as to preclude coverage under both parts of the policy. LHC, the Daniels, and the Barrows then filed motions for reconsideration of the summary judgment, pointing out that the professional services exclusion only applied to the CGL

part of the policy. The district court recognized its error and granted the motions for reconsideration as to the CPL part of the policy but affirmed its ruling as to Northfield having no duties under the CGL part. The district court ultimately determined that the criminal acts and physical/sexual abuse exclusions did not apply so as to preclude coverage and a duty to defend under the CPL part. The court entered its declaratory judgment on October 8, 2002, which ordered that Northfield has a duty to defend LHC and the Daniels. The Barrows then filed a motion to amend the judgment, requesting the district court delete the phrase "This is a final judgment" because the duty-to-indemnify issue was still before the court. The district court denied the motion and dismissed the duty-to-indemnify issue without prejudice. Northfield timely appealed, and the Barrows cross-appealed.

**DISCUSSION**

This Court reviews whether an insurer has a duty to defend its insured in an underlying suit as a *de novo* question of law. *Guar. Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998). Under Texas law, which the parties agree governs this diversity case, the duty to defend and the duty to indemnify are distinct and separate duties. *See King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002) (citation omitted). The duty to defend is broader than the duty to indemnify. *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 368 (5th Cir. 1998) (applying Texas law).

6

The Texas Supreme Court recently restated in *King* that:

> An insurer's duty to defend is determined solely by the allegations in the pleadings and the language of the insurance policy. This is the "eight corners" or "complaint allegation rule." If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured. But we resolve all doubts regarding the duty to defend in favor of the duty.

85 S.W.3d at 187 (quotations and footnotes omitted); *see also Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997) (noting that courts give the petition's allegations a liberal interpretation). Thus, the duty to defend arises only when the facts alleged in the complaint, if taken as true, would *potentially* state a cause of action falling within the terms of the policy. *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co.*, 99 F.3d 695, 701 (5th Cir. 1996) (applying Texas law) (citation omitted). The insured bears the initial burden of establishing that a claim against it is potentially within the policy's coverage. *Id.* (citation omitted). The insurer is obligated to defend the insured, provided that the petition or complaint alleges at least one cause of action potentially within the policy's coverage. *Id.* (citation omitted).

The duty to defend is determined by consulting the latest amended pleading. *Id.* (citation omitted); *see also Guar. Nat'l*, 143 F.3d at 194. The focus of the inquiry is on the alleged facts, not on the asserted legal theories. *St. Paul Fire & Marine Ins. Co.*

7

***v. Green Tree Fin. Corp.-Tex.***, 249 F.3d 389, 392 (5th Cir. 2001) (applying Texas law). "[I]n case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in insured's favor." ***Merchants***, 939 S.W.2d at 141 (citation omitted). If the petition *only* alleges facts excluded by the policy, however, the insurer is not required to defend. ***Fid. & Guar. Ins. Underwriters, Inc. v. McManus***, 633 S.W.2d 787, 788 (Tex. 1982). Facts ascertained before suit, developed in the process of litigation, or determined by the ultimate outcome of the suit do not affect the duty to defend. ***Trinity Universal Ins. Co. v. Cowan***, 945 S.W.2d 819, 829 (Tex. 1997) (citation omitted).

After the insured meets his burden to show that the alleged facts in the petition state a potential claim against him, to defeat the duty to defend, the insurer bears the burden of showing that the plain language of a policy exclusion or limitation allows the insurer to avoid coverage of *all* claims, also within the confines of the eight corners rule. *See* Tex. Ins. Code Ann. art. 21.58(b) (Vernon Supp. 1997); ***Calderon v. Mid-Century Ins. Co. of Tex.***, No. 03-97-00735-CV, 1998 WL 898471, at *2 (Tex. App.–Austin Dec. 29, 1998, pet. denied) (not designated for publication) (citing ***E&L Chipping Co. v. Hanover Ins. Co.***, 962 S.W.2d 272, 274 (Tex. App.–Beaumont 1998, no pet.)); ***Butler & Binion v. Hartford Lloyd's***

8

*Ins. Co.*, 957 S.W.2d 566, 568 (Tex. App.–Houston [14th Dist.] 1995, writ denied).

In contrast, "the duty to indemnify is not based on the third party's allegations, but upon the actual facts that underlie the cause of action and result in liability." *Canutillo*, 99 F.3d at 701 (citations omitted); *see also* ***Tesoro Pet. Corp. v. Nabors Drilling, USA, Inc.***, 106 S.W.3d 118, 125 (Tex. App.–Houston [1st Dist.] 2002, pet. denied) ("Facts, however, not allegations, determine an indemnitor's duty to indemnify."). If any ambiguity exists, exceptions and limitations in a policy are construed strictly against the insurer. *Canutillo*, 99 F.3d at 701 (citations omitted). Thus, courts "adopt the construction of an exclusionary clause urged by the insured as long as that construction is not itself unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *Id.* (quoting ***Barnett v. Aetna Life Ins. Co.***, 723 S.W.2d 663, 666 (Tex. 1987)). Generally, Texas law only considers the duty-to-indemnify question justiciable after the underlying suit is concluded, unless "*the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify.*" ***Farmers Tex. County Mut. Ins. Co. v. Griffin***, 955 S.W.2d 81, 84 (Tex. 1997).

**Whether there is an exception to the strict eight corners rule in Texas.**

9

The Texas Supreme Court has never recognized any exception to the strict eight corners rule that would allow courts to examine extrinsic evidence when determining an insurer's duty to defend. *Landmark Chevrolet Corp. v. Universal Underwriters Ins. Co.*, 121 S.W.3d 886, 890 (Tex. App.–Houston [1st Dist.] 2003, pet. filed). However, as the district court in *Westport Insurance Corp. v. Atchley, Russell, Waldrop & Hlavinka, L.L.P.*, 267 F. Supp. 2d 601, 611-22 (E.D. Tex. 2003), extensively examined, certain Texas appellate courts, this Court, and district courts in this Circuit have appeared to recognize a narrow exception.[1] The most recent

---

[1] *See, e.g.,* **W. Heritage Ins. Co. v. River Entm't**, 998 F.2d 311, 313 (5th Cir. 1993) ("However, when the petition does not contain sufficient facts to enable the court to determine if coverage exists, it is proper to look to extrinsic evidence in order to adequately address the issue."); **McLaren v. Imperial Cas. & Indem. Co.**, 767 F. Supp. 1364, 1374 (N.D. Tex. 1991), *aff'd*, 968 F.2d 17 (5th Cir. 1992) ("[T]here appears to be a more general rule that the true facts always can be used to establish non-existence of a defense obligation, no matter what the plaintiff might allege in her damage suit complaint."); **State Farm Fire & Cas. Co. v. Wade**, 827 S.W.2d 448, 452-53 (Tex. App.–Corpus Christi 1992, writ denied) (concluding that extrinsic evidence could be admitted in deciding the duty to defend when the facts alleged are insufficient to determine coverage and "when doing so does not question the truth or falsity of any facts alleged in the underlying petition"); **Gonzales v. Am. States Ins. Co.**, 628 S.W.2d 184, 187 (Tex. App.–Corpus Christi 1982, no writ) (holding that facts extrinsic to the petition relating only to coverage, not liability, may be considered to determine a duty to defend, where such evidence does not contradict any allegation in the petition); **Cook v. Ohio Cas. Ins. Co.**, 418 S.W.2d 712, 715-16 (Tex. Civ. App.–Texarkana 1967, no writ) ("[T]he [Texas] Supreme Court draws a distinction between cases in which the merit of the claim is the issue and those where the coverage of the insurance policy is in question. In the first instance the allegation of the petition controls, and in the second the known or ascertainable facts are to be allowed to prevail."); **Int'l Serv. Ins. Co. v. Boll**, 392 S.W.2d 158, 161 (Tex. Civ.

Texas appellate court case to apply an exception to the eight corners rule is **State Farm Fire & Casualty Co. v. Wade**, 827 S.W.2d 448 (Tex. App.-Corpus Christi 1992, writ denied), which was decided in 1992.  There, an appeals court found that in the absence of any factual allegation concerning how the boat which was the subject of the policy was used, because the court could not determine whether or not the personal boat owner's private liability policy possibly provided coverage even by reading the underlying petition broadly, extrinsic evidence could be considered.  **Id**. at 453.  The court found that how the boat in question was used at the time of the accident – whether the use was commercial or private – was an essential fact of coverage that did not question the truth or falsity of any facts alleged in the underlying petition.  **Id.**

However, in making an **Erie**[2] guess about what the current Texas Supreme Court would say about the existence and application of such an exception, the court in **Westport** noted that no Texas appellate decision has ever both cited and applied this **Wade** line of cases. 267 F. Supp. 2d at 618-19 ("[E]ven the court that announced the decision on which the **Wade** line of cases depends has retreated . .

---

App.-Houston [1st Dist.] 1965, writ ref'd n.r.e.) (considering extrinsic evidence of identity of driver of insured boat by stipulation to conclude no duty to defend or indemnify arose).

[2]**Erie R.R. Co. v. Tompkins,** 304 U.S. 64 (1938); **Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co.**, 953 F.2d 985, 988 (5th Cir. 1992)("[I]t is the duty of the federal court to determine as best it can, what the highest court of the state would decide.").

11

. .";  *see  also  Tri-Coastal  Contractors,  Inc.  v.  Hartford Underwriters  Ins.  Co.*,  981  S.W.2d  861,  863-64  (Tex.  App.–Houston [1st  Dist.]  1998,  pet.  denied)  (applying  the  strict  eight  corners approach  to  reverse  the  trial  court's  use  of  extrinsic  evidence  and noting  how  no  other  Texas  appellate  court  has  ever  applied  *Wade*).

In  *Tri-Coastal*,  the  appellate  court  declined  to  follow  *Wade*  and refused  to  consider  extrinsic  evidence,  even  though  the  petition  did not  contain  sufficient  facts  to  determine  the  application  of  a worker's  compensation  exclusion,  which  indisputably  would  have applied  to  bar  the  duties  to  defend  and  indemnify  if  such  evidence had  been  considered.    981  S.W.2d  at  863-64.    The  court  found  the petition  did  allege  facts  regarding  the  negligence  of  the  insured sufficient  to  state  a  potentially  covered  cause  of  action.    *Id.*  at 864.    The  court  also  concluded  that  the  issue  of  whether  an  injured employee  of  the  insured  collected  worker's  compensation  benefits went  to  the  merits  of  his  lawsuit;  extrinsic  evidence  could  not  be considered  even  if  the  court  were  to  "craft  an  exception  to  the general  rule."  *Id.*  Most  recently  in  December  2003,  in  light  of  the consideration  and  rejection  of  any  exception  to  the  strict  eight corners  rule  by  the  Texas  appellate  court  in  *Tri-Coastal*,  the appeals  court  in  *Landmark  Chevrolet*  again  declined  to  apply  any *Wade*-type  exception  to  supplement  insufficient  pleadings  that,  even given  a  liberal  interpretation,  did  not  state  even  a  possibly covered  truth-in-lending  claim.    121  S.W.3d  at  890-91.

12

The **Westport** court thus came to the conclusion that only in very limited circumstances is extrinsic evidence admissible in deciding the duty to defend – where fundamental policy coverage questions can be resolved by readily determined facts that do not engage the truth or falsity of the allegations in the underlying petition, or overlap with the merits of the underlying suit. 267 F. Supp. 2d at 621 (quotations and citation omitted). Fundamental coverage issues have been defined to include: (1) whether the person sued has been specifically excluded by name or description from any coverage, (2) whether the property in suit is included in or has been expressly excluded from any coverage, and (3) whether the policy exists. *Id.; see also* **Calderon**, 1998 WL 898471, at *4; **Tri-Coastal**, 981 S.W.2d at 863 n.1.

As mentioned above, this Court has previously relied on the **Wade** line of Texas appellate cases to recognize a narrow exception to Texas's strict eight corners rule. For example, in **Western Heritage**, we determined that extrinsic evidence could be used in an insurance dispute where the underlying amended petition did not allege or provide any factual explanation for how the restaurant patron involved had arrived at such an impaired state that he could not operate a vehicle. 998 F.2d at 313-15. There, because the facts alleged were not specific enough, even interpreted in the light most favorable to the insured, to possibly bring the claim within the negligence coverage of the policy, which specifically

13

excluded damages stemming from the sale of alcoholic beverages to an intoxicated person, extrinsic evidence was allowed to determine the insured's duty to defend. *Id.* Likewise, in *John Deere Insurance Co. v. Truckin' U.S.A.*, 122 F.3d 270, 272-73 (5th Cir. 1997), we determined that extrinsic evidence could be considered in an insurance dispute where the underlying petition only alleged that the tractor trailer rig involved in an accident had been furnished to the defendants or that defendants had a working relationship with the insured trucking company. There, because the facts alleged were insufficient, even if taken as true, to state a cause of action under the policy, extrinsic evidence was allowed to show whether the rig was a "covered auto" such that insurer had a duty to defend. *Id.*

In light of the Texas appellate courts' unwavering unwillingness to apply and recent repudiations of the **Wade** type of exception, this Court makes its **Erie** guess that the current Texas Supreme Court would not recognize any exception to the strict eight corners rule. That is, if the four corners of the petition allege facts stating a cause of action which potentially falls within the four corners of the policy's scope of coverage, resolving all doubts in favor of the insured, the insurer has a duty to defend. If all the facts alleged in the underlying petition fall outside the scope of coverage, then there is no duty to defend. However, in the unlikely situation that the Texas Supreme Court were to recognize

14

an exception to the strict eight corners rule, we conclude any exception would only apply in very limited circumstances: when it is initially impossible to discern whether coverage is potentially implicated *and* when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case.[3]

**Whether the district court erred in determining that Northfield had a duty to defend LHC and the Daniels in the underlying tort suit.**

---

[3]This alternative position is not at odds with this Court's previous decisions in **Western Heritage** and **John Deere**. In **Western Heritage**, the facts alleged as to the restaurant's failure to prevent the patron from driving away or failure to call him a cab, 998 F.2d at 314, were clearly not sufficient to determine whether policy coverage for negligence was potentially implicated. Such alleged facts did not explain how the restaurant came to have any sort of duty regarding the patron. The stipulated extrinsic fact that the sale of alcoholic beverages was involved and the patron was intoxicated was readily determinable and went to the fundamental issue of whether the restaurant was specifically excluded by description from coverage in the case. The underlying petition did not factually explain at all how the patron had arrived at such an impaired state that he could not operate a vehicle, so the extrinsic evidence did not engage the truth or falsity of the underlying allegations nor overlap with the merits of the underlying case. Likewise, in **John Deere**, the facts alleged as to the rig involved in the accident being a covered vehicle under the policy, 122 F.3d at 272, were clearly not sufficient to determine whether coverage for negligence was potentially implicated. The extrinsic evidence consulted to determine whether the rig was a covered vehicle was readily determined by looking to the rig's title certificate; such evidence went to the fundamental issue of whether the property involved was indeed insured under the policy. The underlying petition did not factually explain at all how the allegations that the rig was furnished to the defendants or that the defendants had a working relationship with the insured determined the insured status of the rig involved, so the extrinsic evidence did not engage the truth or falsity of the underlying allegations nor overlap with the merits of the underlying case.

On appeal, Northfield only challenges the district court's refusal to look to extrinsic evidence to determine "whether Bianca Barrows' death resulted from a 'criminal act' by Celia Giral" or arose from physical abuse by Giral.[4] Northfield points to the Barrows' petition and labels all the so-called factual allegations – such as the negligent dropping and/or shaking of Bianca by Giral and the negligent hiring, training, and supervising of Giral by LHC – as legal theories that do not determine the duty to defend. Thus, Northfield asserts that Texas law allows courts to consider extrinsic evidence when the petition in the underlying suit does not allege facts sufficient to enable the court to determine whether the criminal acts and physical exclusions apply. Northfield relies on three cases for this proposition: *Guaranty National*, 143 F.3d at 194 (applying *Western Heritage*); *John Deere*, 122 F.3d at 272 (applying *Wade*); and *Matagorda Ventures, Inc. v. Travelers Lloyds Insurance Co.*, 203 F. Supp. 2d 704, 714 (S.D. Tex. 2000) (citing but not applying *Wade*). Northfield thus argues that Giral's criminal conviction and the autopsy report on Bianca's injuries establish as a matter of law that all the damages suffered by the Barrows arise

_____

[4]Northfield did not challenge the district court's finding that "the Barrowses' complaint asserts negligence against LHC and the Danielses, and not an intentional tort, [such that] Northfield has a duty to defend LHC absent any policy exclusion." Thus, Northfield asks this Court to allow extrinsic evidence at the point where the burden has shifted to Northfield to show that an exclusion plainly bars coverage of all the Barrows' claims under the eight corners rule.

16

from a criminal act and/or physical abuse; thus, no duty to defend or to indemnify LHC and the Daniels can be imposed on Northfield.

Northfield maintains that although the general rule under Texas law is that where the complaint does not allege facts sufficient to bring it clearly within the scope of coverage, the insurer is obligated to defend if there is potentially a case falling within coverage, the exception applies when the petition labels conduct as negligent, where the true nature of the conduct has been found criminal. Northfield relies on a North Dakota Supreme Court case, *Ohio Casualty Insurance Co. v. Clark*, 583 N.W.2d 377, 380 (N.D. 1998), which held that an insurer had no duty to defend based on extrinsic evidence of criminal conviction that established that "intentional injury" exclusion applied, even where the underlying petition alleged negligence.[5]

Northfield also contends that Texas law under the *Wade* line of cases permits exceptions to the eight corners rule, such as in *Western Heritage*. There, the district court concluded that based on extrinsic evidence establishing that a "liquor liability" exclusion applied, there was no duty to defend the insured

---

[5]We note that North Dakota does not operate under a strict eight corners rule like Texas. There, "an insurer has no duty to provide a defense in an action that would yield no possibility of liability to its insured." *Clark*, 583 N.W.2d at 380 (quotations omitted). *Clark* is inapposite because in Texas, the duty to defend is broader than the duty to indemnify; and generally the duty to indemnify is not justiciable until the underlying suit is over, so the insurer may bear a duty to defend even where ultimately no duty to indemnify is found.

restaurant, even where all references to alcohol and intoxication had been deleted in the amended complaint. 998 F.2d at 313, 315.[6] In essence, Northfield argues the Barrows are perpetuating a fraud upon the court by artfully pleading facts to bring excluded claims within coverage; courts can look to extrinsic evidence when the petition omits or misrepresents material facts that clearly would have excluded coverage, such as the Barrows have done here. Finally, Northfield argues that the fundamental coverage caveat to the eight corners exception is either wrong, or is not limited to the three definitions laid out in case law. That is, if the caveat applies, the question of the application of the criminal acts and physical abuse exclusions is one of fundamental coverage.

The Barrows, LHC, and the Daniels argue that because this is a duty-to-defend inquiry only, the district court properly applied Texas law, which is clear that extrinsic evidence is not to be considered under any exception. The Barrows' third-amended petition clearly alleged negligent dropping and/or shaking behavior by Giral toward Bianca, not intentional acts of physical abuse; and these facts, if properly assumed to be true, unambiguously stated at least

---

[6]What fully distinguishes this case from **Western Heritage** is that the Barrows' petition did not fail to explain what factually had happened to Bianca to result in her death at all. Moreover, the facts alleged clearly indicated LHC and its employees had a duty toward the Barrows and Bianca. In **Western Heritage**, the petition did not factually explain at all how the patron involved had arrived at such an impaired state that he could not operate a vehicle such that any possible duty owed by the restaurant to the patron might have arisen. 998 F.2d at 313.

18

one negligence claim facially within the policy's coverage. *See* *Lafarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 394 (5th Cir. 1995), *overruled on other grounds by* *Grapevine Excavation, Inc. v. Maryland Lloyds*, 35 S.W.3d 1, 5 (Tex. 2000) (noting that the complaint as amended to include facts alleging negligence was clearly not a case where it was impossible to discern whether coverage was potentially indicated). The Barrows, LHC, and the Daniels contend that any uncertainties as to whether allegations in a petition state a covered cause are to be resolved in favor of the insured. *See* *Tri-Coastal*, 981 S.W.2d at 863. In *Tri-Coastal*, the Texas appeals court refused to consider extrinsic evidence, even though the petition did not contain sufficient facts to determine the application of a worker's compensation exclusion, where the employee's underlying petition alleged facts indicating negligence potentially covered by the employer's liability policy. *Id.* at 862–64. Likewise, here, without such extrinsic evidence, Northfield cannot and did not demonstrate that any exclusion applied to *all* the Barrows' claims against LHC and the Daniels.

The Barrows, LHC, and the Daniels assert that even if an exception to the eight corners rule does exist, it does not apply here because the Barrows' petition properly alleged facts sufficient, if taken as true, to potentially state at least one cause of action falling within the policy; namely, negligence on the part of Giral in dropping and/or shaking Bianca. This is a

19

separate, alternative allegation from that claiming Giral's behavior was criminally negligent under Texas Penal Code Section 6.03. Likewise, the allegation of Giral's negligent behavior, criminal or not, does not constitute the kind of culpable mental state to which the physical abuse exclusion would apply. This is clearly what the district court found, and what Northfield did and does not contest: the Barrows' petition alleged facts sufficient to state a claim of negligence potentially falling within Northfield's policy with LHC.

The Barrows attack the cases relied on by Northfield for its proposition that extrinsic evidence may be considered when a petition does not state sufficient facts to determine the applicability of an exclusion. *Guaranty National* did not address this issue because in that case there was no doubt a pollution exclusion applied; extrinsic evidence was necessary because sufficient facts were not alleged to meet the insured's burden of showing a sudden and accidental exception to the exclusion applied. 143 F.3d at 195. The Barrows' case is distinguished because LHC has already carried its initial burden of showing that the claims against it fall potentially within the scope of coverage, and Northfield has failed to meet its burden of showing an exclusion plainly applied to exclude all the Barrows' claims. The Barrows also argue against any exception applying here to use extrinsic evidence to trigger an exclusion because such evidence would not pertain only to coverage, but to liability as well, *Gonzales v.*

20

*American States Insurance Co.,* 628 S.W.2d 184, 186-87 (Tex. App.- Corpus Christi 1982, no writ), and because such evidence would tend to contradict allegations pertaining to Giral's neglectful dropping and/or shaking behavior in the Barrows' petition, *id.* at 187.

The Barrows emphasize that the *Wade* rationale applied by *Western Heritage* has *never* been followed by other Texas courts and should be rejected. And even if such limited exception exists, it does not apply here because the extrinsic evidence would engage the truth or falsity of the Barrows' alleged facts. *Wade*, 827 S.W.2d at 453. That is, evidence of the intentional actions of Giral would place the accidental nature of the dropping and/or shaking allegations in the Barrows' petition in question.[7] Unlike the petition in *John Deere*, which did not sufficiently allege that the rig involved in the accident was a vehicle covered by the policy, 122 F.3d at 272, the Barrows' petition clearly did trigger the negligence coverage provision of the CPL part of the policy. Likewise, *Matagorda Ventures* is inapposite because the court's statement that an exception applies when the petition does not state facts sufficient to determine the applicability of an exclusion is dicta and has never been applied in practice, 203 F. Supp. 2d at 714-15. Finally, the Barrows argue that if any exception applies to the eight corners rule, it solely concerns the determination of

---

[7]Giral was convicted of first-degree felony injury to a child, which means the jury had to find that she acted intentionally or knowingly. Tex. Pen. Code Ann. § 22.04(a)(1), (e) (West 1996).

21

fundamental coverage questions, which does not encompass whether any criminal act or physical abuse exclusion applies here.

Here, the district court correctly looked to the strict eight corners rule to determine the duty to defend.  It properly focused on the alleged facts in the Barrows' petition about Bianca and Giral's behavior toward her, not legal theories, and that they should be construed in the insured's favor.  Contrary to what may have been implied by Northfield, the district court did not refuse to acknowledge that any exception to the eight corners rule might exist.  In fact, the district court cited *John Deere* for the proposition that Texas law would allow extrinsic evidence if the petition did not allege facts sufficient to trigger coverage. 122 F.3d at 272 (citation omitted).  The district court properly placed the initial burden on LHC and the Daniels to establish that at least one claim against them was potentially within the scope of coverage and then shifted the burden to Northfield to establish that an exclusion plainly applied to all claims to defeat coverage.  The district court correctly determined that the Barrows' complaint asserted a claim of negligence within the policy's scope of coverage – properly construing in LHC's favor the Barrows' factual allegations pertaining to Giral's dropping and/or shaking behavior. This determination was not challenged by Northfield.

What Northfield did challenge was that the policy's exclusions vitiated any duties to defend and indemnify LHC based on the

22

Barrows' original complaint, which referenced Giral's criminal conviction. LHC, the Daniels, and the Barrows responded that the live, third-amended petition's alleged facts only supported a cause of action for negligence. The district court properly refused to read extrinsic facts into the pleadings and followed the strict eight corners rule, finding no exception to apply. Although Northfield makes arguments that stress the artful pleading by the Barrows to keep the criminal and intentional allegations out, the latest pronouncement on the eight corners rule by the Texas Supreme Court in *King* reemphasized the strictness of the rule. Once the Barrows alleged facts that stated a cause of action that potentially fell within the scope of CPL coverage, no matter what facts the previous versions of their petition alleged, the burden shifted to Northfield to show that the plain language of the policy exclusions when compared against the facts alleged in the underlying petition precluded coverage. Northfield did not meet this burden under the duty to defend's eight corners inquiry.

And even in the unlikely event that the Texas Supreme Court were to allow for a limited exception, whether the criminal acts and physical abuse exclusions bar the duty to defend in this case would not fit such narrow exception. First, it is clearly possible to discern whether coverage is potentially implicated here, as distinguished from all the cases Northfield relies on, including *Wade* and *Western Heritage*. In fact, Northfield did not even raise

23

this argument before the district court.  Second, there is no case in Texas or this Circuit that has ever applied any exception to allow extrinsic evidence where the insurer submits the petition in the underlying suit that does not allege facts sufficient to enable the court to determine whether certain exclusions apply, as distinct from and after the initial inquiry to determine whether coverage is potentially implicated.  Third, even if Texas law permitted extrinsic evidence during the initial duty-to-defend determination of potential coverage, the possible application of these specific exclusions does not constitute a fundamental issue of coverage.  It is at least a step removed from any inquiry about express inclusions or exclusions of specific property or persons, or if the policy exists.  There is no express exclusion in the policy specific to Giral as a covered employee or to injuries to Bianca as covered property, such as could be resolved by any readily determined fact.

Finally, even if the application of these exclusions were considered a fundamental coverage issue that could be answered by looking to extrinsic evidence, the extrinsic evidence here (Giral's conviction and the autopsy report on Bianca) would be barred by the prohibition that such evidence cannot put the truth of the dropping and/or shaking facts alleged in the Barrows' petition into question. Such evidence clearly overlaps with the merits of the Barrows' underlying negligence suit.  Thus, the district court properly used Texas's strict eight corners rule in determining Northfield had a duty to defend LHC and the Daniels in the underlying tort suit filed

24

against them by the Barrows.

**Whether this Court can review whether the district court properly refused to decide the issue of Northfield's duty to indemnify LHC and the Daniels.**

On cross-appeal, the Barrows argue that this Court has no jurisdiction to decide Northfield's duty to indemnify LHC and the Daniels. Fed. R. App. P. 3(c)(1)(B) requires a notice of appeal to "designate the judgment, order, or part thereof being appealed." The Barrows assert Northfield's October 31, 2002, notice of appeal only referenced the final judgment entered on October 8, 2002, and not the order entered on June 4, 2003, which denied the Barrows' motion to amend judgment and dismissed the duty-to-indemnify issue without prejudice because it was nonjusticiable. The Barrows also contend that Northfield waived any error in the district court's duty-to-indemnify decision because Northfield opposed the Barrows' motion to amend to make the judgment nonfinal by agreeing the duty to indemnify was nonjusticiable.

Northfield responds that it would have no reason to appeal the June 4, 2003, order, as that order went in its favor by refusing to make the judgment nonfinal. Northfield argues that its initial summary judgment motion addressed its lack of both the duty to defend and indemnify LHC and the Daniels, which the district court initially granted but then later denied by granting the Barrows', the Daniels', and LHC's motions for reconsideration. That is, the district court ultimately denied Northfield's motion for summary

25

judgment as to both duties.  Northfield contends the final judgment decided that Northfield had a duty to defend and that its duty to indemnify was nonjusticiable at the time.   The district court clarified this in its order denying the Barrows' motion to amend: "A review of the record indicates that the parties and the Court agreed that the declaratory judgment in question was a final judgment, as the issues regarding the duty to indemnify were not justiciable at that point."   Northfield notes that *Guaranty National*, 143 F.3d at 196, relied on by the Barrows, is distinguishable because here Northfield had not stipulated that its duty to indemnify was nonjusticiable but rather had argued that it had no such duty when it moved for summary judgment.  Northfield asserts that the duty to indemnify only became nonjusticiable when the district court erroneously determined there was a duty to defend.

Northfield is correct as to the reviewability of its duty to indemnify.  The district court did ultimately deny Northfield's motion for summary judgment on both the duties to defend and indemnify; however, when the district court ruled there was a duty to defend, then the duty to indemnify became nonjusticiable.  That is, the district court was only going to find lack of a duty to indemnify if it found lack of a duty to defend because Texas law generally prohibits the determination of the duty to indemnify before the conclusion of the underlying suit against the insured.

26

*Westport*, 267 F. Supp. 2d at 626 (citing *Griffin*, 955 S.W.2d at 84). Thus, this Court can review the district court's decision on Northfield's duty to indemnify.

**Whether the district court erred in determining Northfield's duty to indemnify LHC and the Daniels was nonjusticiable.**

As stated above, Texas law only considers the duty-to-indemnify question justiciable after the underlying suit is concluded, unless "*the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify.*" *Griffin*, 955 S.W.2d at 84. In addition, district courts have discretion to decline to grant relief as to the duty to indemnify under the authorization of the Declaratory Judgment Act. *See Westport*, 267 F. Supp. 2d at 633 (citations omitted).

Here, the only way for the district court to have erred in its nonjusticiability decision of Northfield's duty to indemnify would be if it had erred in its decision that Northfield owed LHC and the Daniels a duty to defend. Because the district court was correct in that determination, it not only had discretion to refuse to decide the duty-to-indemnify issue, but Texas law clearly indicated that it would err by doing so because the underlying litigation was not completed.

CONCLUSION

Having carefully reviewed the record of this case, the parties' respective briefing and arguments, and for the reasons set forth

above, we AFFIRM the district court's decisions as to Northfield's duty to defend LHC and the Daniels in the underlying tort suit filed against them by the Barrows and as to the present nonjusticiability of Northfield's duty to indemnify LHC and the Daniels.

**AFFIRMED.**