PER CURIAM: *
In this insurance coverage dispute, B. Hall Contracting (“Hall”) appeals the district court’s grant of summary judgment in favor of Evanston Insurance Company (“Evanston”). We VACATE the grant of summary judgment and REMAND for further proceedings.
I.
Evanston issued a comprehensive general liability insurance policy (“Policy”) to Hall, for a one-year term, in January 2003. *311 The Policy obligates Evanston to “pay those sums that the insured becomes legally obligated to pay as damages because of ‘bodily injury5 or ‘property damage’ to which this insurance applies,” and provides that Evanston “will have the right and duty to defend the insured against any ‘suit’ seeking those damages.”
When Hall purchased the Policy, Hall requested a “Roofing-Commercial” classification as one of its “Hazards/Insured Classification(s).” The “Roofing Endorsement” of the Policy, however, states, in pertinent part, that the coverage under the policy “does not apply to ‘bodily injury,’ ‘property damage,’ ‘personal injury,’ ... or any injury, loss or damage arising out of: ... Any operations involving any hot tar, wand, open flame, torch or heat applications, or membrane roofing.” In short, for our purposes today, the Policy provides roofing coverage but under the Roofing Endorsement excludes that coverage for “membrane roofing.”
In October 2003, Hall was performing carpentry, roofing, and painting work on the campus of the University of Texas at Arlington (“UTA”). Hall was a subcontractor on a project to demolish a structure housing, among other things, UTA’s main electrical switchgear. Hall was not subcontracted to demolish the structure itself; one of Hall’s tasks, though, was to install a roofing system above the switchgear room inside the main structure such that it would be protected from the weather and remain operational while and after the larger building was demolished.[1]
The roofing system to be installed for this purpose was a type of membrane roofing known as ethylene propylene diene monomer (“EPDM”). Further, the roofing system was to be installed using a “cold” application EPDM roofing material. No heat source—such as “hot tar, wand, open flame, torch or heat applications”— was required for this application.
On October 24, while Hall was installing the membrane roofing above the switchgear room, other contractors were carrying on with the demolition of the larger building. The demolition workers’ efforts generated sparks that allegedly fell onto the membrane roof and ignited a fire.
As a result of this fire, two Texas state lawsuits were filed naming Hall as a defendant. Evanston refused to assume the duty to defend Hall in the two lawsuits. Evanston argued that the claims were not covered by the Policy because the Roofing Endorsement excludes claims arising from operations involving membrane roofing.
Before the district court, Hall sought a declaratory adjudication of its rights under the Policy. Both parties moved for summary judgment. The district court granted summary judgment to Evanston, concluding that Evanston has no duty to defend Hall in the two state lawsuits.
The district court’s grant of summary judgment rests on several grounds. We need only refer to the first, as our disagreement with the district court as to this first issue is dispositive.
The district court held that the Roofing Endorsement “unambiguously” excludes any operations involving any membrane roofing. The district court did not define “membrane roofing,” stating that “[i]n the final analysis, the only thing relevant to this case ... is that the roofing operation in which Hall was engaged at the time of the fire was, indeed, an operation involving membrane roofing.”
*312 II.
Hall contends that the district court erred by granting summary judgment in favor of Evanston. Hall argues, inter alia, that “membrane roofing” is a specialized, industry-specific term that should be interpreted via reference to evidence of trade usage and industry meaning.
jjj
We review whether an insurer has a duty to defend its insured in an underlying suit as a de novo question of law. North-field Ins. Co. v. Loving Home Care, Inc., 363 F.3d 523, 527 (5th Cir.2004).
,, In this diversity case we apply the substantive insurance law of Texas. Texas courts interpret insurance policies according to the rules of construction that apply to contracts generally. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc., 907 S.W.2d 617, 520 (Tex.1995).
When interpreting a contract, courts are to ascertain the “true intent of the parties as expressed in the contract itself. Id. This determination is accomplished by giving words their plain, ordinary, and generally accepted meaning unless the contract shows that the parties used them in a technical or different sense. Heritage Res., Inc. v. NationsBank, 939 S.W.2d 118, 121 (Tex.1996).
Our study of the Policy, the record, the arguments of the parties, and our own attempt to resolve this case have convinced us that “membrane roofing” is a term that cannot properly be Uprated without trence to evidence of trade usage and industry meaning. The Policy insures a commercial and industrial construction and remodeling contractor not a layman and the term itself is a term common within the commercial roofing trade and business. The term was not defined in the Policy. As such, this term “membrane roofing” cannot be properly interpreted without some understanding of how it is used in the roofing industry[2]
Although the insured provided expert affidavits concerning membrane roofing, neither party provided a comprehensive ,definition of that term as it is understood in the commercial roofing industry.[3] Hall argues that under the Roofing Endorsement, which excludes loss or damage arising out of...[a]ny operations involving any hot tar, wand, open flame, torch or heat applications, or membrane roofing,” the words immediately preceding “membrane roofing” describing various heat appiicati0ns modify the term “membrane roofing.” We disagree. The proximity of the words describing roofing operations involving heat applications does not indicate that hot application membrane roofing js the only type of membrane roofing ex-eluded. This is because the phrase “membrane roofing” is set off from the list of hot applications by a comma and the word “or” *313 indicating that it is distinct of, separate from, and unrelated to the preceding list.[4]
Hall argues that this interpretation of the term proves it is ambiguous. Hall argues that exclusion of both cold and hot application membrane roofing would exclude “virtually all” roofing operations from coverage and the Roofing Endorsement would thus afford no coverage, which would lead to an absurd result. Resolution of this issue requires a technical definition of membrane roofing, i.e., the meaning of that term in the roofing industry.
The district court granted Evanston’s motion for summary judgment without considering trade-usage evidence. Because Evanston relied on the “plain, ordinary, and generally accepted meaning” of the term, and because the district court decided the case on this basis, no trade-usage evidence was admitted by the district court.[5] We conclude that this ruling was error.
IV.
We therefore VACATE the district court’s grant of summary judgment and REMAND this case for further proceedings not inconsistent with this opinion. On remand, the district court must allow the parties to proffer expert testimony to support their respective positions on the meaning of the term “membrane roofing,” and decide the coverage question in the light of that testimony and other properly admitted evidence.
VACATED and REMANDED.

 Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

. The district court’s opinion indicates that Hall hired a sub-subcontractor to install the roof above the switchgear room. The parties' briefing to this court has not indicated the same, nor has it indicated that this distinction is relevant to the issues raised on appeal.

. The experts provided by Hall indicated that the term is a specialized commercial roofing terra. Precedent suggests that, in this circumstance, we should consider the term in its specialized industry context. See, e.g., Canutillo School Dist. v. Nat. Union Fire Ins. Co., 99 F.3d 695, 700 (5th Cir. 1996) (citing Security Mut. Cas. Co. v. Johnson, 584 S.W.2d 703, 704 (Tex.1979)); see also, Heritage, 939 S.W.2d at 121; CBI, 907 S.W 2d at 521, 522 n. 6; Crisalli v. ARX Holding Corp., 177 Fed. Appx. 417, 421 (5th Cir.2006).

. Hall’s effort to invoke the interpretive doctrines of ejusdem generis and noscitur a sociis are unavailing because section 3 of the Roofing Endorsement simply does not meet the requirements for either term.

. Hall proffered roofing industry experts who testified to the trade-usage meaning of “membrane roofing.” The district court, however, upon granting summary judgment in favor of Evanston, dismissed as moot Evanston's challenges to the designation of Hall’s roofing-industry experts and the evidence was not admitted.

. Evanston did proffer an affidavit of an underwriter who interpreted the Roofing Endorsement in such a way that it would afford limited coverage even if all operations includ;ng membrane roofing are excluded. But the underwriter is not an expert in the constructjon industry and her assertion of an underwriter’s understanding of the term cannot be considered in arriving at its meaning within ^ construction industry.